IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>WALTER JEOVANNY RUBIO LEMUS,<br>      a/k/a "Caskillo,"<br><br>    *Defendant.* | Case No. 1:21-mj-377 |

**AFFIDAVIT IN SUPPORT OF A**
**CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Paul J. Fisher, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since August 2012.  As an FBI Special Agent, I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 1959.

2.      I am currently assigned to a squad that investigates crimes against children. However, prior to my current assignment, I spent approximately 5 years on a Safe Streets Task Force that investigated drug criminal enterprises and violent gangs for the FBI Washington Field Office's Northern Virginia Resident Agency ("WFO-NVRA").

3.      I have specialized training and experience in the areas of narcotics-related criminal activity, gang-related criminal activity, interview and interrogation techniques, evidence recovery, source recruitment, arrest procedures, search and seizure, and cellular phone analysis.  As an FBI Special Agent, I have investigated violent gang-related activity and firearm and drug trafficking

1

for approximately five years, which resulted in the arrest of subjects, the seizure of property and assets, and the seizure of controlled substances.

4.     I submit this affidavit in support of a criminal complaint and arrest warrant charging WALTER JEOVANNY RUBIO LEMUS, a/k/a "Caskillo" ("RUBIO LEMUS"), with conspiring to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (B)(ii)(II), and 846.

5.     The facts and information contained in this affidavit are based upon my personal knowledge, training, and experience, as well as information and evidence obtained from witnesses and other law enforcement officials.  All observations I did not personally make were relayed to me by the individuals who made them or come from my review of records, documents, and other physical evidence obtained during the course of this investigation.

6.     This affidavit contains information necessary to support probable cause for this application.  It is not intended to include each and every fact and matter observed by me or known to the United States.  Accordingly, where I refer to conversations and events, I often refer to them in substance and in relevant part rather than in their entirety or verbatim, unless otherwise noted. This affidavit also reflects my current understanding of facts relating to this investigation, but my understanding may change in the future as the investigation proceeds.

## **PROBABLE CAUSE**

Background

7.     The FBI and local law enforcement agencies have been conducting an investigation of criminal activity in the Washington, D.C. area perpetrated by members and associates of the *Sitios Locos Salvatruchas* clique (hereinafter "STLS") of the violent, transnational street gang known as *La Mara Salvatrucha* ("MS-13").

8.      During the course of the investigation, law enforcement has purchased more than 780 grams of cocaine and multiple firearms from STLS members and associates using confidential informants and a law enforcement officer operating in an undercover capacity.

December 2019 Controlled Purchase

9.      In December 2019, a confidential informant working at the direction of the FBI ("C/I-1") arranged a narcotics transaction with an individual, whose initials are M.A.R, wherein C/I-1 would be provided with 7 grams of cocaine in exchange for $500 in United States Currency.

10.     On or about December 18, 2019, law enforcement searched C/I-1's person and vehicle and confirmed that he or she was not in possession of any narcotics or money. FBI agents subsequently provided C/I-1 with a recording device and $500 in prerecorded buy-funds.

11.     C/I-1, surveilled by law enforcement, drove to a prearranged location in Woodbridge, Virginia to purchase the cocaine. C/I-1 spoke with M.A.R. on the phone, and M.A.R. advised that he was on his way to the location. Approximately 20 minutes after C/I-1 arrived at that location, a suburban arrived.

12.     A young Hispanic male exited that suburban and entered C/I-1's vehicle. The subject advised C/I-1 that his name was "Jeovanny." He provided C/I-1 with a baggie of a white, powdery substance in exchange for the $500. He also gave C/I-1 his phone number, which had a 301-area code, before exiting C/I-1's vehicle.

13.     C/I-1 proceeded to speak with M.A.R., who told C/I-1 that what he had sent C/I-1 was of good quality.

14.     C/I-1 provided the baggie he had obtained to FBI agents, along with the recording device, which captured audio of the transaction. Forensic testing at the Drug Enforcement

Administration Laboratory in Largo, Maryland confirmed that the contents of the baggie weighed 6.750 g ± 0.002 g and contained cocaine, a Schedule II drug.

15.     Records provided to the FBI by Sprint, the telecommunications carrier that services the 301 number that "Jeovanny" provided to C/I-1, revealed that "Walter Rubio" was the listed subscriber.

Demente's Phone

16.     On or about May 8, 2020, an STLS member, M.C.S., a/k/a "Demente," ("Demente"), was arrested in Virginia on local drug trafficking charges. When he was arrested, Demente was in possession of multiple cellular telephones. Data from those phones was forensically extracted by the FBI pursuant to a federal search warrant.

17.     The data extracted from Demente's telephones contained evidence that Demente was a high-ranking MS-13 member and held a leadership role in STLS in the United States. The data further revealed that Demente communicated with other MS-13 members and associates by sending and receiving text messages ("TM") and recorded voice messages ("VM") via WhatsApp. Demente's phone also contained a clique photograph that depicted RUBIO LEMUS (whose face is pictured below) and other identified STLS members and associates, some of whom had also sold cocaine to law enforcement during the course of the investigation.



October 2020 Interview

18. On or about October 7, 2020, RUBIO LEMUS was arrested on local charges and interviewed by law enforcement. Prior to the interview, the entirety of which was audio and video recorded, RUBIO LEMUS was advised of his *Miranda* rights and elected to speak with law enforcement.

19. After initially denying any involvement with narcotics, RUBIO LEMUS admitted to distributing cocaine. He claimed to have only done so approximately four different times for M.A.R., who would arrange the deals in advance and tell RUBIO LEMUS where to go and with whom to meet.

20. RUBIO LEMUS admitted that M.A.R. referred to him as "Caskillo" or "Caski" and that MS-13 members would refer to him as a "paro."

Phone Evidence

21. In connection with this investigation, law enforcement has reviewed data forensically extracted from cellular phones belonging to other targets pursuant to federal search warrants.

22. Data contained in those devices shows that RUBIO LEMUS has been involved with MS-13 for several years and has been involved with STLS' drug trafficking activities since at least January 2018.

23. Specifically, the name "Caskillo" appears in numerous reports that document gang activities and certain ledger-style documents reflecting amounts of money owed by members of the drug conspiracy for "product" they had been provided to sell. The reports featuring the name "Caskillo" date back to at least January 2018 and also feature the monikers of other identified

STLS members and associates, several of whom have sold cocaine to law enforcement during the course of this investigation.

## CONCLUSION

24.     Based on the foregoing facts, I respectfully submit that there is probable cause to believe that from at least in and around January 2018 through October 7, 2020, within the Eastern District of Virginia, WALTER JEOVANNY RUBIO LEMUS did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(B)(ii)(II), and 846.

Respectfully submitted and attested to in accordance with the requirements of Fed. R. Crim. P. 4.1 via telephone on November 12, 2021.

_____
Paul F. Fisher, Special Agent
Federal Bureau of Investigation

Sworn and subscribed to me on November 12, 2021.

John F. Anderson
Digitally signed by John F. Anderson
Date: 2021.11.12 16:17:15 -05'00'

_____
The Honorable John F. Anderson
United States Magistrate Judge