IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 1:21-CR-260 |
| v. | Hon. Leonie M. Brinkema |
| CRISTIAN ARIEL AREVALO ARIAS, | Trial Date: September 11, 2023 |
| *Defendant.* | Motions Hearing Date: May 23, 2023 |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S JURY SELECTION MOTIONS**

Defendant Cristian Ariel Arevalo Arias ("Arevalo") has moved the Court to utilize a jury questionnaire to identify prospective jurors for the trial in the above-captioned case. ECF No. 209. Arevalo has also asked the Court to grant him and his co-defendants additional peremptory strikes that they can exercise separately. ECF No. 213. Defendants Manilester Andrade Rivas, Jairo Gustavo Aguilera Sagastizado, Melvin Canales Saldana, and Marvin Menjivar Gutiérrez have moved to adopt both of Arevalo's motions. *See* ECF Nos. 223, 229, 232, 234, 235, 249. For the reasons stated herein, both of Arevalo's motions should be denied.

**ARGUMENT**

**I.    A Jury Questionnaire is Unnecessary in this Case and Should Not Be Employed.**

The use of jury questionnaires in this district is typically reserved for capital or high-profile cases. *See, e.g.*, *United States v. Paul Manafort, Jr.*, No. 1:18cr83-TSE; *United States v. Jorge Avila Torrez*, No. 1:11cr115-LO; *United States v. William J. Jefferson*, No. 1:07cr209-TSE; *United States v. Thomas Morocco Hager*, No. 1:05cr264-RDA. Because the United States is not seeking the death penalty as to any defendant in this case, there is no need for the Court to employ a jury

questionnaire.  Here, the defendants' Sixth Amendment rights to an impartial jury can be assured through the standard *voir dire* process.  *Voir dire* "serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991).  A trial court has broad discretion to control the scope of questions during *voir dire*.  *See Rosales-Lopez v. United States*, 451 U.S. 182, 188–89 (1981); *Kasi v. Angelone*, 300 F.3d 487, 509 (4th Cir. 2002); *see also United States v. Simmons*, No. 2:16cr130, 2017 WL 6388956, at *9 (E.D. Va. Dec. 14, 2017) ("The decision to use a written jury questionnaire rests in the sound discretion of the trial judge." (internal quotation marks and citation omitted)).  In this case, the government believes that potential biases can be adequately probed during *voir dire* without the use of a written questionnaire.

In *United States v. Bakker*, 925 F.2d 728 (1991), the Fourth Circuit rejected the defendant's argument that the use of a written questionnaire was necessary to secure a fair trial, holding that the "proper way to impanel such jurors is through a careful *voir dire* like that conducted by the trial court here." *Id.* at 733–34.  As the district court did in *Bakker*, this Court can conduct a thorough *voir dire* "directed at disclosing the impact that both past and future media attention would have upon potential jurors." *Id.* at 733.  Indeed, in every criminal case, this Court conducts a careful *voir dire* to elicit potential biases and prejudices that might deprive the defendant of a fair trial.  During the *voir dire* process, the Court typically poses a series of questions to the entire jury panel and then, when necessary, asks follow-up questions of individual prospective jurors either in or outside the presence of other panel members.  Significantly, counsel for the defendants and the government will be permitted to participate in the *voir dire* process not only by submitting proposed *voir dire* questions in advance of trial, but also by requesting that additional questions be asked of particular panel members who have provided answers meriting further explanation.

This tried and true procedure provides a perfectly adequate means of rooting out bias and prejudice, thereby ensuring the selection of an impartial jury.

*Voir dire*—including questions regarding whether the prospective jurors' views on MS-13 and illegal immigration would prevent any juror from rendering a fair and impartial verdict—is more than sufficient to meet the concerns raised by the defendants.  When compared to the use of a written questionnaire, this Court's standard *voir dire* practice is far more likely to ferret out bias triggered by press coverage or anti-immigrant views.  That is because during *voir dire*, the Court and the parties will have an opportunity to observe and evaluate the demeanor of potential jurors.  That opportunity is not available with written questionnaires.  *See Mu'Min*, 500 U.S. at 425 (recognizing that written answers to juror questionnaires "would not give counsel or the court any exposure to the demeanor of the juror in the course of answering").  Therefore, the Court's *voir dire* is preferable to a written questionnaire in addressing the concerns raised by the defendants.

Moreover, allowing the use of a questionnaire introduces the significant likelihood of disputes (and attendant delay) over the questionnaire's contents.  *See, e.g.*, *Bakker*, 925 F.2d at 733–34 (rejecting defendant's claim that court erred by refusing to submit questionnaire to potential jurors and noting "the questionnaire was concerned less with ensuring an impartial jury and more with ensuring a jury inclined to acquit").  For instance, Arevalo suggests that his proposed jury questionnaire will explore the "feelings or opinions [of the members of the jury pool] about the relationship between race, immigration, and crime." ECF No. 209 at 4.  Putting aside the vagueness and unworkability of such an expansive, politically-tinged inquiry, it should be noted that the relevant inquiry is not whether and to what extent the prospective jurors hold opinions on immigration and its effects, if any, on crime, but rather whether the jurors have "such

3

fixed opinions that they could not judge impartially the guilt of the defendant." *Patton v. Young*, 467 U.S. 1025, 1035 (1984).

Unfortunately, the Eastern District of Virginia is no stranger to multi-defendant MS-13 racketeering trials. Time and time again, the jury selection process established by the Federal Rules and the customary practices employed by courts in this district have repeatedly proven sufficient to ensure the selection of a fair and impartial jury. Jury questionnaires have been requested but not authorized in multiple non-capital MS-13 murder cases tried in this district. *See United States v. Edgar Oswaldo Blanco Torres, et al.*, 1:17cr238-LMB, ECF 115 at 2; *United States v. Wilmar Javier Viera Gonzalez, et al.*, 1:16cr209-LO, ECF 338; *United States v. Pedro Anthony Romero Cruz, et al.*, 1:14cr306-GBL, ECF 622. There is no reason to deviate in this case from this Court's customary practice of conducting an extensive *voir dire* to expose impermissible bias on the part of prospective jurors.[1]

## II. The Court Should Not Grant Arevalo's Request for Additional Peremptory Challenges.

Arevalo's motion for additional peremptory challenges should similarly be denied. Where, as here, the defendants have failed to demonstrate a particularized need for additional peremptory challenges, the court does not abuse its discretion by denying such motions. *United States v. Meredith*, 824 F.2d 1418, 1423 (4th Cir. 1987). The grounds asserted by Arevalo in support of his request for additional peremptory challenges are unpersuasive. Arevalo argues that "there are likely to be conflicting jury selection interests between the defendants in this particular case." ECF No. 213 at 3. Arevalo goes on to describe some of the differences between the defendants in this

---

[1] Should the Court allow the use of a jury questionnaire, the government requests the opportunity to propose questions or areas of inquiry, and to be heard regarding any disputes with the defendants regarding the questionnaire's contents.

case, but he fails to connect the dots as to how or why those dissimilarities mean that their interests regarding whom to strike are likely to diverge.

To the extent that the Court disagrees, the government respectfully requests a comparable increase in the number of its peremptory challenges to preserve the 6:10 ratio set forth in Rule 24(b) of the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 24(b)(2) ("The government has 6 peremptory challenges and the defendant or defendants jointly have 10 peremptory challenges when the defendant is charged with a crime punishable by imprisonment of more than one year."). Moreover, the government requests that the Court defer until shortly before trial its decision regarding the *number* of additional peremptory challenges to grant the parties, especially since it is unknown at this time how many defendants will actually proceed to trial.

## CONCLUSION

Wherefore, for the foregoing reasons, Arevalo's motions related to jury selection should be denied.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
John C. Blanchard
Maureen C. Cain
Megan C. Braun
Assistant United States Attorneys

Matthew K. Hoff
Department of Justice Trial Attorney
Organized Crime and Gang Section

## CERTIFICATE OF SERVICE

I certify that on May 5, 2023, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will cause a true and accurate copy of this document to be transmitted to counsel of record.

By: _____/s/_____
John C. Blanchard
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3999
Fax: (703) 299-3980
John.Blanchard@usdoj.gov