IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CRISTIAN ARIEL AREVALO ARIAS,<br><br>and<br><br>MARVIN MENJIVAR GUTIÉRREZ,<br><br>*Defendants*. | No. 1:21-CR-260<br><br>Hon. Leonie M. Brinkema<br><br>Trial Date: September 11, 2023<br><br><u>Motions Hearing Date: May 23, 2023</u> |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTIONS CONCERNING CO-CONSPIRATOR STATEMENTS**

Defendant Cristian Ariel Arevalo Arias ("Arevalo") has moved the Court to order the United States to "(1) produce the identity and statements of any alleged coconspirator that the prosecution intends to offer at trial pursuant to Fed. R. Evid. 801(d)(2)(E) or a hearsay exception, and (2) produce any exculpatory evidence relating to such alleged coconspirators." ECF 214 at 1. Defendants Manilester Andrade Rivas ("Andrade"), Jairo Gustavo Aguilera Sagastizado ("Aguilera"), and Melvin Canales Saldana ("Canales") have moved to adopt Arevalo's motion. *See* ECF Nos. 231, 232, and 236.

In a similar vein, defendant Marvin Menjivar Gutiérrez ("Menjivar") has filed a series of motions pertaining to various forms of statements and those who may have made them. First, Menjivar requests that the Court enter "an Order requiring the government to disclose the existence of statements, by whomever made, which the government will seek to attribute to him, including but not limited to, statements by his alleged co-conspirators, adoptive admissions or any other vicarious utterance of any kind, which by the force of law, may be attributed to the defendant as if

they were the defendant's own." ECF 216 at 1. Canales and Aguilera have moved to adopt this motion. *See* ECF Nos. 232, 237. Next, Menjivar asks the Court to enter "an Order requiring the government to disclose to the defendant any statements or confessions by any co-defendant which arguably incriminate the defendant, and which the government intends to offer at trial." ECF 217 at 1. Aguilera has moved to adopt this motion. *See* ECF No. 232. Finally, Menjivar, joined by Andrade and Aguilera, asks the Court to enter "an Order compelling the government to provide all favorable evidence against witnesses not called to the stand by them." ECF 218 at 1; *see also* ECFs. 231, 232.

The defendants' motions should be denied because, of the information they seek, much has already been produced in discovery, some will be produced closer to trial in the interest of witness security, and the remainder is not subject to disclosure under any rule or binding precedent.

## ARGUMENT

**I.     Menjivar's Motion to Compel Disclosure of His Co-Defendants' Statements Is Moot Because the Government Has Already Produced Them.**

Menjivar requests entry of an order compelling the government to produce any statements or confessions of co-defendants in this case. Absent from Menjivar's motion is an acknowledgment that the government has already produced such statements. Each defendant in this case was provided with his or her own post-arrest interview in April of 2022. Although Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure does not require it,[1] the government also

---

[1] The plain text of Rule 16(a)(1)(A) requires only that the government disclose oral statements made by the defendant. *See* Fed. R. Crim. P. 16(a)(1)(A) ("[T]he government must disclose to the defendant the substance of any relevant oral statement *made by the defendant*, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." (emphasis added)). The Fourth Circuit has explicitly rejected the argument that this rule applies to co-conspirator statements. *See United States v. Roberts*, 811 F.2d 257, 258 (4th Cir. 1987) (en banc) ("[Rule 16(a)(1)(A)] does not mention and is not intended to apply to the discovery of statements made by co-conspirators.").

2

produced to all counsel in November 2022 the post-arrest interviews of all the defendants who were interviewed by law enforcement in connection with this case, along with the post-arrest interviews of unindicted co-conspirators who were arrested at the state level but who do not appear in the Superseding Indictment. The government produced not only the audio and video recordings of those statements, but also reports memorializing them and handwritten notes taken by law enforcement officers during those interviews. Because "a reasonable person in the declarant's position would have expected his statements to be used at trial," those post-arrest statements are testimonial in nature. *United States v. Udeozor*, 515 F.3d 260, 268 (4th Cir. 2008); *see also Davis v. Washington*, 547 U.S. 813, 822 (2006) ("Statements are . . . testimonial when the circumstances objectively indicate that there is no [such] ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."). Therefore, for approximately 6 months, the defendants have been in possession of all existing testimonial statements made by their co-defendants. They are thus fully equipped to determine whether any of those statements potentially violate *Bruton v. United States*, 391 U.S. 123 (1968).[2]

Insofar as the defendants are requesting *non-testimonial* statements of their co-defendants that incriminate them, such as incriminating statements made during and in furtherance of the conspiracy, such statements have also already been produced in discovery. For more than a year, the defendants have been in possession of the vast majority of phone extractions obtained in this investigation and recordings of controlled cocaine purchases and meetings conducted with them

---

[2] To the extent Menjivar intends his motion to apply more broadly to non-testimonial statements by co-defendants, that request has no basis. As the Fourth Circuit has held, "*Bruton* is simply irrelevant in the context of nontestimonial statements." *United States v. Dargan,* 738 F.3d 643, 651 (4th Cir. 2013).

3

and their co-conspirators. The United States has also produced to all the defendants in this case nearly all of the social media records it has obtained to date, and the government has produced audio recordings and summary transcriptions/translations of recorded phone calls conducted with defendants in this case. These materials, and others already produced, contain numerous incriminating statements that were made by the defendants and their co-conspirators during and in furtherance of the charged conspiracies, and the government intends to introduce as evidence at trial a substantial number of those communications. Should the government obtain any additional evidence that reflects statements admissible under Rule 801(d)(2)(E) of the Federal Rules of Evidence, it will promptly produce such evidence pursuant to Rule 16(a)(1)(E). Consequently, there is no need for the Court to compel the government to produce any of the defendants' testimonial or non-testimonial statements, and those motions requesting such relief can and should be denied as moot.

**II.     Arevalo's and Menjivar's Motions for Production of All Co-Conspirator Statements Should Be Denied Because Such Statements Have Been or Will Be Disclosed to the Defense.**

Arevalo and Menjivar also both request that the Court compel the government to produce the testimonial and non-testimonial statements of any co-conspirator, not just co-defendants, including statements that the prosecution intends to offer against them under Rule 801(d)(2)(E). In toto, the United States is being asked to produce the testimonial and non-testimonial statements of two categories of co-conspirators: (1) those testifying; and (2) those who will not be testifying but whose statements might otherwise be admissible under the Federal Rules of Evidence. Menjivar also seeks an Order compelling the United States to identify specifically any statements that could arguably be attributed to him, be it as an adoptive admission or virtually under any other legal theory. *See* ECF 216 at 1. These motions should be denied because the requested statements

have been produced or will be provided in advance of trial and because the government is not required to specify its exhibits months before trial.

      **A.**    **Non-Testimonial Statements of Both Testifying and Non-Testifying Co-Conspirators Have Already Been Produced.**

Insofar as Arevalo and Menjivar are requesting the production of non-testimonial statements of co-conspirators, their motions are moot. As stated above, the government has already produced such materials to the defense. Those materials contain numerous incriminating statements by the defendants and their co-conspirators made during and in furtherance of the charged conspiracies, and the government intends to use a substantial number of them at trial as evidence of the crimes charged. For that very reason, the government produced that material pursuant to Rule 16(a)(1)(E), which requires the government to permit the defense to inspect and copy all documents and data the government intends to use in its case-in-chief. Should the government obtain any additional evidence that reflects statements admissible under Rule 801(d)(2)(E), it will promptly produce such evidence pursuant to Rule 16(a)(1)(E).

      **B.**    **Testimonial Statements of Co-Conspirators Expected to Testify for the Government Will Be Produced as Jencks Material, and Reports Summarizing Such Statements Will Be Made Available for Review.**

To begin with, Federal Rule of Criminal Procedure 16 does not compel the disclosure of the statements of a defendant's co-conspirators. In *Roberts,* the Fourth Circuit directly addressed this issue, holding as follows:

> The plain language of Fed. R. Crim. P. 16(a)(1)(A) pertains to the discovery of statements "made by the defendant." The rule does not mention and is not intended to apply to the discovery of statements made by co-conspirators. Such statements are more properly governed by the Jencks Act, 18 U.S.C. § 3500.

> When the statements of persons other than the defendant are sought, questions of witness safety necessarily arise. The phrase 'witness safety' incorporates our concerns about those persons whose inculpatory statements may be introduced at trial. The dichotomy the dissent would have us draw between declarants and witnesses is utterly unrealistic. It fails to recognize, among other things, that the disclosure of co-conspirator statements may expose not only the declarant to threats and intimidation, but also those expected to testify at trial concerning the declarant's statements. This approach endangers government witnesses by circumventing the protections of the Jencks Act, and we reject it.

811 F.2d at 258-59.

Despite such statements being governed by the Jencks Act, the United States has already produced many such statements well in advance of any Jencks deadline, with redactions of some of the interviewees' identities to maintain witness safety. The United States will continue to produce any such materials consistent with its discovery obligations and at a later date will allow defense counsel to review unredacted materials at the U.S. Attorney's Office tied to statements the government intends to introduce at trial.

With respect to written summaries of other custodial interviews of cooperating co-conspirators who will testify at trial, the government will produce those recordings consistent with its Jencks Act obligations closer to trial. Because reports that merely summarize information provided by testifying co-conspirators during interviews with law enforcement are not "statements" subject to production under the Jencks Act or any discovery rule, the government

will only make such reports available for review at the United States Attorney's Office at least 21 days before trial.[3]

While the defendants never indicate precisely *when* the government should be compelled to make the requested disclosures, the government objects to the extent that the defendants' motions seek production or disclosure of testimonial statements made by testifying witnesses prior to the Jencks Act deadline that will be set by this Court. The Jencks Act provides that the government need not produce any statement or reports in its possession, made by a government witness, until after that witness has testified on direct examination. *See* 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2. Production of Jencks material 21 days prior to trial—a deadline well in advance of what the law requires—would allow ample time for the defendants to make effective use of the information.

### C. Any Testimonial Statements Made By Co-Conspirators Who Will Not Testify That Have Not Already Been Produced Will Be Produced Sixty Days Before Trial

The government is not required to disclose the testimonial statement of a non-testifying co-conspirator unless such statement constitutes *Brady* material or the government intends to introduce such statement in evidence, rendering it discoverable under Rule 16(a)(1)(E). *See, e.g.*, *Roberts*, 811 F.2d at 258–59 (ruling that Rule 16(a)(1)(A) does not confer a right to discover the statements of a co-conspirator); *United States v. King*, 121 F.R.D. 277, 280 (E.D.N.C. 1988)

---

[3] The reports of interviews were not shown to the government witnesses or read to them. Nor are the reports verbatim transcripts of the statements made by the witnesses during the interviews. Where, as here, the reports of interviews were not adopted or reviewed by the witnesses, the reports do not constitute Jencks material for those witnesses. *See United States v. Roseboro*, 87 F.3d 642, 646 (4th Cir. 1996); *United States v. Smith*, 31 F.3d 1294, 1303 (4th Cir. 1994). In addition, because the government does not anticipate calling the law enforcement agents to testify about their interviews of government witnesses, the reports of interviews do not relate to the subject matter of the agents' anticipated testimony and are therefore not Jencks material for the agents.

("Unfortunately for defendant, the Fourth Circuit has specifically addressed this question *en banc* and held that the plain language of Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure pertains only to the discovery of statements 'made by the defendant' and does not mention nor does it apply to discovery of statements made by co-conspirators.").

Nonetheless, the government will make available for review at the United States Attorney's Office sixty days before trial any recordings of, or written reports summarizing, testimonial statements of co-conspirators who will not be called as government witnesses at trial.[4] Although those co-conspirators are not expected to testify against the defendants at trial, their safety is still a significant concern. Given the nature of the crimes charged in this case, including the murder of J.G.M. in part because he was a witness to the murder of M.B.L., the government has well-founded concerns about the safety of any co-conspirator who made statements to law enforcement, including those who will not be testifying at trial. As the Fourth Circuit recognized in *Roberts*, the disclosure of a co-conspirator's testimonial statements potentially endangers the declarant even though he may not be the one testifying about his prior statements. 811 F.2d at 259 ("[T]he disclosure of co-conspirator statements may expose not only the declarant to threats and intimidation, but also those expected to testify at trial concerning the declarant's statements.") Particularly in light of these witness safety concerns, it is objectively reasonable to require the defense to review unredacted interview reports and recorded interviews of non-testifying co-

---

[4] Again, the United States has already produced such statements. To the extent that the interviewees' identities have been redacted, the government will make unredacted versions of these interviews available for defense counsel to review sixty days prior to trial.

conspirators—which are neither Jencks material nor discoverable under Rule 16—at the United States Attorney's Office.[5]

### III. The Defendants Are Not Entitled to Early Disclosure of the Specific Evidence the Government Will Seek To Introduce At Trial.

In addition to requesting production of all co-conspirator statements, Arevalo and Menjivar also appear to ask the Court to order the government to identify the specific statements the government will seek to introduce at trial. Neither defendant cites a federal rule or case that would require such disclosure, and the government is not aware of any.

The defendants will know precisely what statements the government intends to introduce at trial when they receive a copy of the government's exhibit list, which, consistent with this Court's practice, will be filed much closer to trial. The Court should not require the government to disclose its exhibits any earlier. Even Rule 16, which is a discovery rule, "does not require the prosecution to disclose all the minutia [sic] of its evidence, to reveal its trial strategy, and to delineate with total specificity the case it intends to present." *United States v. Anderson*, 481 F.2d 685, 694 (4th Cir. 1973) (internal quotations marks and citation omitted). Because the Court's standard procedures are reasonable in this case, and because the government should not be compelled to settle on its final trial evidence or reveal its trial strategy months before trial, the Court should not require the government to identify the evidence it will seek to introduce—under Rule 801(d)(2)(E) or any other rule of evidence—far in advance of trial.

---

[5] Were an FBI report detailing information provided by a cooperator to accidentally find its way inside a jail or prison, that inadvertent error could have fatal consequences. *C.f. Morgan v. Bennett*, No. CV-96-4106 (ERK), 1998 WL 315135, at *5–6 (E.D.N.Y. May 27, 1998) (finding that trial court permissibly barred counsel from disclosing to defendant that cooperating witness would testify in trial after witness received threats in prison from defendant's associates), *aff'd in part, vacated in part on other grounds*, 204 F.3d 360 (2d Cir. 2000).

9

Furthermore, not only is the government not required to disclose the nature of its evidence much closer to before trial, but there is also no need for it to do so in this case. The Fourth Circuit has expressly disavowed the requirement that a district court hold a pretrial hearing on the admissibility of co-conspirator statements. *See United States v. Blevins*, 960 F.2d 1252, 1256 (4th Cir. 1992) ("This circuit has rejected the formalistic requirement that there must be a hearing to determine the existence of a conspiracy before statements can be admitted under Rule 801(d)(2)(E)."). Instead, as the Fourth Circuit has made clear, a trial court can "conditionally admit co-conspirators' statements [at trial] subject to the subsequent satisfaction of the requirements for their admission." *Id.*; *see also United States v. Graham*, 711 F.3d 445, 453 (4th Cir. 2013) ("[A] trial court is not required to hold a hearing to determine whether a conspiracy exists before admitting statements under [Rule 801(d)(2)(E)], and the court need not explain the reasoning behind the evidentiary ruling."); *United States v. Fiel*, No. 3:10CR170-6-HEH, 2010 WL 3385147, at *3 (E.D. Va. Aug. 20, 2010) ("This Court will follow the teachings of *Blevins* and allow co-conspirators' statements to be conditionally admitted subject to subsequent proof by the government that they were made during the course of and in furtherance of the conspiracy." (internal quotation marks omitted)).

The Fourth Circuit's approach to admitting co-conspirator statements is practical. In *Bourjaily v. United States*, 483 U.S. 171, 180 (1987), the Supreme Court recognized that "individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it." 483 U.S. 171, 179-80 (1987). In other words, "[t]he sum of an evidentiary presentation may be greater than its constituent parts." *Id.* at 180. Indeed, the United States will rely on evidence from a myriad of sources to establish a conspiracy, including but not limited to: (a) the sworn testimony of any convicted co-conspirator or co-defendant the United States may call as a

10

witness; (b) text messages and phone contacts; (c) social media messages; (d) images and videos; and (e) the testimony of law enforcement witnesses – to prove the existence of a conspiracy, and these pieces of evidence will build upon each other.  Thus, a pretrial hearing to determine the admissibility of co-conspirator statements would amount to a mini-trial, with almost as many witnesses and as much testimony as would be presented at trial.  This is an unnecessary drain on judicial resources.  Contrary to Arevalo's stated fears of being unable to "un-ring that bell," if such statements are improperly introduced at trial, ECF No. 214 at 4, the district court has many remedies, including excluding the statements, striking the testimony, giving a limiting instruction to the jury, or, in extreme circumstances, declaring a mistrial or dismissing the case if the government fails to prove that a conspiracy existed.  *See, e.g.*, *Hines*, 717 F.2d at 1488; *United States v. Francisco,* 35 F.3d 116, 119 (4th Cir. 1994) ("We generally follow the presumption that the jury obeyed the limiting instructions of the district court.").

**IV.     The Defendants' Motions for *Giglio* Material for Co-Conspirators Whose Statements Will be Offered in Evidence Should Be Denied Because, With Respect to Testifying Co-Conspirators, the Motions are Moot, and Because, With Respect to Non-Testifying Co-Conspirators, the Defendants Are Not Entitled to Such Information.**

To meet its *Brady* and *Giglio* obligations, the government must disclose exculpatory and impeachment materials to the defendant "in time for its effective use at trial." *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 407 (4th Cir. 2014); *see United States v. Beckford*, 962 F. Supp. 780, 788 (E.D. Va. 1997).  The government's discovery practices in this case to date make plain that it takes seriously its constitutional obligations as they pertain to discovery.  Accordingly, to the extent that the government has evidence relating to a non-testifying or testifying co-conspirator that is material and favorable to the defendant—and, thus, subject to disclosure under *Brady*—the government will, of course, disclose it to the defense (if it has not already done so).

11

Citing *Brady*, *Giglio*, and Rule 806 of the Federal Rules of Evidence, Arevalo demands disclosure of impeachment evidence for each co-conspirator whose statements the government will seek to admit at trial, even if the co-conspirator does not testify at trial. Menjivar also points to Rule 806 in requesting such information. Despite the lack of any discovery order in this case, the United States will certainly disclose to the defense *Giglio* materials for the witnesses who will testify in the government's case-in-chief.

Allowing the government to disclose its impeachment material for testifying co-conspirators closer to trial is reasonable in light of the balancing the Court must undertake. On the one hand, the defendants need the impeachment materials in time to use them effectively at trial. *Owens*, 767 F.3d at 407. On the other hand, the government must also protect its witnesses. *See, e.g.*, *Beckford*, 962 F. Supp. at 793–94 ("With respect to timing, [the rights conferred by *Brady*] are relative to the fundamental societal interest in a fair trial which produces a rational decision based on all admissible evidence. . . . That interest is severely diminished if important testimonial evidence is lost because a witness disappears out of fear or is threatened, injured or killed."); *see also United States v. Elmore*, 423 F.2d 775, 779 (4th Cir. 1970) (recognizing the appropriateness of *Brady* disclosure at time of trial in light of government's witness intimidation concerns). Here, witness safety concerns justify delaying the disclosure of impeachment material for testifying co-conspirators until 21 days before trial. *See United States v. Celis*, 608 F.3d 818, 825 (D.C. Cir. 2010) (approving staggered disclosure of both impeaching information and Jencks material shortly before and even after trial testimony due to witness safety concerns).

While the government will certainly produce *Giglio* material for its witnesses before trial, it opposes the defendants' motions to the extent that they demand impeachment material for non-testifying co-conspirators whose statements the government will seek to introduce as either non-

hearsay or admissible hearsay. As the defendants correctly point out, Rule 806 provides that a party may challenge the credibility of a declarant whose hearsay statement or statement described in Rule 801(d)(2)(C), (D), or (E) is admitted in evidence. That rule, however, does not speak to the question of what obligation, if any, the government has to disclose impeachment material for a non-testifying declarant. Neither Arevalo nor Menjivar cites to any discovery rule or legal precedent that would impose upon the government the obligation to produce impeachment material for witnesses it has no intention to call. This is not surprising given that *Giglio*'s requirements only apply to witnesses the government calls at trial. *See, e.g.*, *Mosley v. City of Chicago*, 614 F.3d 391, 399 (7th Cir. 2010) (finding no *Brady* violation where government withheld evidence that witness was drunk on night of incident and had no independent recollection of incident "because the state did not call [the witness] at trial and therefore . . . had no obligation to turn over evidence that could impeach his testimony"); *United States v. Green*, 178 F.3d 1099, 1109 (10th Cir. 1999) (holding *Giglio* "inapplicable" to impeachment information for government witness that government "did not ever call"); *United States v. Mullins*, 22 F.3d 1365, 1372 (6th Cir. 1994) (stating that grant of immunity to witness was not "favorable to the accused" as impeachment evidence because government did not call witness "and, thus, there was no one to impeach"); *United States v. Pearson*, No. 1:15-CR-193, 2016 WL 7647523, at *4 (E.D. Va. Aug. 11, 2016), *aff'd*, 676 F. App'x 202 (4th Cir. 2017) ("Because Chapman was never a government witness, *Giglio* did not compel the disclosure of evidence that could have been used to impeach him.").

Although the government opposes being compelled to find and produce potential impeachment information for co-conspirators who will not be called by the government at trial, it is certainly willing to provide to the defense any impeachment evidence in its possession for non-testifying co-conspirators whose statements the government will seek to introduce at trial. Indeed,

13

some such *Giglio* material has already been produced to the defense in this case, including materials relating to the criminal histories of co-conspirators the government does not anticipate calling at trial.

## **CONCLUSION**

Wherefore, for the foregoing reasons, the defendants' motions should be denied.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
John C. Blanchard
Maureen C. Cain
Megan C. Braun
Assistant United States Attorneys

Matthew K. Hoff
Department of Justice Trial Attorney
Organized Crime and Gang Section

## CERTIFICATE OF SERVICE

I certify that on May 5, 2023, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will cause a true and accurate copy of this document to be transmitted to counsel of record.

By: _____/s/_____
John C. Blanchard
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3999
Fax: (703) 299-3980
John.Blanchard@usdoj.gov