IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | 1:21-CR-260 |
| | : | |
| CRISTIAN AREVALO ARIAS, | : | |
| | : | |
| Defendant. | : | Honorable Leonie M. Brinkema |
| | : | |

## OBJECTIONS TO GOVERNMENT'S *BRUTON* PROPOSAL

The Accused, Cristian Arevalo Arias, respectfully objects to the prosecution's *Bruton* proposal, which addresses an October 8, 2020, interview of Manilester Andrade Rivas. These objections are made pursuant to Mr. Arevalo's rights to due process, a fair trial, confrontation of the witnesses against him, the presumption of innocence, and other rights protected by the Fifth and Sixth Amendments to the United States.

In support of this Motion, Mr. Arevalo states as follows:

1. On January 6, 2022, the prosecution brought a superseding indictment that added eleven defendants, including Mr. Arevalo, to this case. At that time, the prosecution charged Mr. Arevalo with racketeering conspiracy, cocaine conspiracy, one count of distribution, and six counts related to the June 2019 homicides of Milton Beltran Lopez and Jairo Geremeas Mayorga. *See* Doc. 27.

2. Two codefendants—Melvin Canales Saldana and Manilester Andrade Rivas—were charged with three counts related to the August 2019 homicide of Eric Lanier Tate. Mr. Arevalo was *not* charged in connection with that homicide.

3. On June 15, 2023, the prosecution brought a new indictment charging Mr. Arevalo with the Tate homicide. Doc. 295.

1

4. Currently, Mr. Arevalo is set for a joint trial with his codefendants, including Mr. Andrade.

5. Trial is scheduled to begin on October 2, 2023. The Court's trial order requires the Government to disclose "any *Bruton*-redacted statements that it plans to use in its case-in-chief due 60 days before trial," and for the defendants to object thirty days later. Doc. 306.

6. On August 3, 2023, the Government provided a transcript containing its translation of Mr. Andrade's October 8, 2020, interrogation by law enforcement officers. The transcript highlights the names and nicknames of codefendants but does not propose any alterations. *See* Government's *Bruton* Proposal (attached as **Exhibit 1**).

7. As detailed below, the Government's proposal is inadequate to protect Mr. Arevalo's constitutional rights. In addition to being constitutionally insufficient under *Bruton* and its progeny, the Government's proposal includes inadmissible and irrelevant hearsay from persons other than Mr. Andrade.

## ARGUMENT

Mr. Arevalo objects to the Government's proposal on four grounds. *First*, the transcript merely highlights the names of codefendants and does not eliminate references to Mr. Arevalo or his codefendants. The Government's highlighted transcript thus does not constitute an adequate *Bruton* proposal. *Second*, Mr. Arevalo objects to the admission of Mr. Andrade's statements linking him to the Tate homicide, as Mr. Arevalo's Confrontation Clause rights cannot be adequately protected if those statements are admitted in a joint trial. *Third*, Mr. Arevalo objects to the Government's inclusion of numerous inadmissible hearsay statements made by law enforcement officers during Mr. Andrade's interrogation. *Fourth*, Mr. Arevalo objects to Mr.

Andrade's statements about the double homicide, as those statements are irrelevant and are comprised of hearsay within hearsay from multiple unidentified sources. Each of these arguments is addressed in more detail below.

1. **The Government Has Not Provided an Adequate *Bruton*-Redacted Statement.**

This Court ordered the Government to provide its proposed "*Bruton*-redacted statements" to the defense at least sixty days before trial. In lieu of proposed redactions, the Government provided a transcript in which it has highlighted the names or nicknames of the defendants. But highlighting the problem is not sufficient, because not all possible solutions are created equal. For example, the United States Supreme Court has held that substituting "a blank space or the word 'deleted'" is an insufficient remedy for the Confrontation Clause problem posed by the admission of a codefendant's statements. *Gray v. Maryland*, 523 U.S. 185 (1998). In contrast, the Supreme Court has approved of "the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but *any reference to his or her existence*." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (emphasis added). In this case, the Government has not taken any steps to eliminate references to the existence of Mr. Andrade's codefendants.

*Bruton* holds "that a defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Richardson*, 481 U.S. at 201 (citing *Bruton v. United States*, 391 U.S. 123 (1968)). Subsequently, in *Richardson*, the Supreme Court considered whether the Confrontation Clause was violated where a codefendant's statement "was redacted to omit all reference to respondent—indeed, to omit all indication that *anyone* other than [the codefendant

who made the statement and a fugitive who was not on trial] participated in the crime." *Id*. at 203. The Court held "that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id*. at 211. The *Richardson* Court expressly left open the question of "the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." *Id*. at 211 n.5.

> In *Gray*, the United States Supreme Court addressed this question:
>
> Originally, the codefendant's confession in the case before us, like that in *Bruton*, referred to, and directly implicated, another defendant. The State, however, redacted that confession by removing the nonconfessing defendant's name. Nonetheless, unlike *Richardson*'s redacted confession, this confession refers directly to the "existence" of the nonconfessing defendant. The State has simply replaced the nonconfessing defendant's name with a kind of symbol, namely, the word "deleted" or a blank space set off by commas . . . . We therefore must decide a question that *Richardson* left open, namely, whether redaction that replaces a defendant's name with an obvious indication of deletion, such as a blank space, the word "deleted," or a similar symbol, still falls within *Bruton*'s protective rule. We hold that it does.

*Gray*, 523 U.S. at 192.

In sum, the Confrontation Clause is implicated not only by the express naming of a defendant, but also by statements that obviously refer to the defendant. As Exhibit 1 demonstrates, the Government has simply highlighted the defendant's nicknames, but has not proposed a remedy. This is amply demonstrated by Mr. Andrade's discussion of the Tate shooting, in which the Government has simply highlighted Mr. Arevalo's alleged nickname without any indication of how it intends to eliminate these multiple obvious references to him. *See* **Exhibit 1** at 109–21. The Government's "*Bruton*-redacted statement" is thus neither redacted, nor is it altered to address numerous obvious references to the defendants.

## 2. Redacting Mr. Arevalo's Name from the Tate Statements Would Be Insufficient to Protect His Confrontation Clause Rights.

As Mr. Arevalo has repeatedly argued, his Confrontation Clause rights will be violated by a joint trial in which Mr. Andrade presents a self-defense case. *See* Doc. 349, 412. This is because Mr. Andrade intends to argue that Mr. Arevalo shot Tate in self-defense, implicating Mr. Arevalo as a participant in the Tate homicide without any opportunity for Mr. Arevalo to confront him. Given that this Court has denied Mr. Arevalo's motion for severance, the only way to protect Mr. Arevalo's Confrontation Clause rights is to prevent the Government from admitting "redacted" statements about Tate that both the prosecution and Mr. Andrade will quickly un-redact. Consequently, Mr. Arevalo objects to the admission of any of Mr. Andrade's statements indicating that either "Serio" or an unidentified person whose name has been redacted was involved in the Tate homicide.

Mr. Andrade's statements refer to three alleged participants in the Tate shooting—"Serio, Tecolote . . . and Wiso." *See* Exhibit 1 at 109–12. The Government alleges that Mr. Arevalo is "Serio." *See* Doc. 295 at 1 (Second Superseding Indictment). Neither "Tecolote" (Abner Molina Rodriguez) nor "Wiso" (Wilmer Cabrera Rivera) will be on trial. Because the other men are not on trial, the Government has highlighted only "Serio." The effect is that it will be obvious that Mr. Andrade's statements refer to Mr. Arevalo, a constitutional problem that will be exacerbated by Mr. Andrade's presentation of an affirmative defense that names Mr. Arevalo as the shooter.

As the Court held in *Gray*, *Bruton* prohibits "redactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration . . . ." 523 U.S. at 192. Such redactions pose multiple constitutional problems, including that "a jury will often react similarly to an unredacted confession and a

5

confession redacted in this way, for the jury will often realize that the confession refers specifically to the defendant." *Id*. at 193. Additionally, "the obvious deletion may well call the jurors' attention specially to the removed name," and thus "overemphasize the importance of the confession's accusation—once the jurors work out the reference." *Id*. In other words, *Bruton* bars not only express references to a defendant's name, but also obvious references to the defendant by other means. *See also Samia v. United States*, 599 U.S. ___, 143 S. Ct. 2004 (2023) (noting that "instead of saying '[m]e, deleted, deleted, and a few other guys,' the witness could easily have said '[m]e and a few other guys.'") (quoting *Gray*, 523 U.S. at 196) (alterations in original); *United States v. Min*, 704 F.3d 314 (4th Cir. 2013) ("The statement did not implicate any one defendant in particular, nor did it leave the jury to fill in any obvious blanks.").

In this case, simply removing Mr. Arevalo's alleged nickname will not eliminate the Confrontation Clause problem. This is due in part to the fact that the statements refer to only one defendant who is on trial, while the two other men Mr. Andrade identifies are discussed by name because they are not on trial. The Government intends to introduce Mr. Andrade's statement and then point the finger at Mr. Arevalo as the only participant on trial, thus quickly undoing the redaction for the jury. Additionally, there is no remedy for the *Bruton* problem in this case because Mr. Andrade is presenting an affirmative defense. *Bruton* and its progeny address the Confrontation Clause problem that arises when a nontestifying codefendant's statements are admitted against him, and the accused cannot cross-examine that codefendant. In the ordinary case, altering the codefendant's statement to eliminate references to the accused may be sufficient. But in this case, any question about whom the redactions refer to will be quickly answered by Mr. Andrade's own arguments, which Mr. Arevalo cannot cross-examine.

In its most recent *Bruton* decision, the Supreme Court recognized that a limiting

instruction might not be sufficient under *Richardson* where the prosecution's arguments "undo the effect of the limiting instruction . . . ." *Samia*, 143 S. Ct. at 2016 n.2. This case presents an unusual circumstance in which both the prosecution and Andrade are poised to undo both any redactions and the effect of any limiting instruction. In short, what good is redacting Mr. Andrade's statement if the statement obviously refers to an unidentified person, and Mr. Andrade then identifies that person at trial as Mr. Arevalo? *Bruton* redactions are meant to remedy the accused's inability to cross-examine a nontestifying codefendant, a remedy that is completely meaningless if that same nontestifying codefendant is permitted to fill in the blanks. The only remedy is to exclude the portions of Andrade's statement that indicate another person was involved in the Tate homicide.

   3. **The Government's Proposal is Replete with Inadmissible and Irrelevant Hearsay Statements by Law Enforcement Officers.**

In addition to failing to provide an adequate *Bruton* proposal, the Government's transcript is replete with inadmissible statements. Specifically, while some of Mr. Andrade's statements may constitute party admissions that are admissible against him, there is no hearsay exception that allows the admission of numerous statements made by the law enforcement officers involved in his interrogation. These statements are thus inadmissible hearsay. Some examples include the following statements by law enforcement officers:

   a. "I know you've made trips up to New York with *Astuto*." Exhibit 1 at 6.

   b. "I know you brought back a lot of cocaine for *Astuto* and for MS." Exhibit 1 at 6.

   c. "I know you work closely with Blue." Exhibit 1 at 7.

   d. "I also know you work on your own. You've sent Karen up. You've sent Natalie [PH] out. You've sent Casquillo out . . . " Exhibit 1 at 7.

   e. "I know you are a member . . . . you've above a paro." Exhibit 1 at 8.

    f. "I've seen a book. You know Wiso? Before he was deported . . . . Yeah, your name is in his book. We have that. . . . It's listed in there." Exhibit 1 at 8.[1]

    g. "I know you are a drug dealer prior to hanging out with MS . . . ." Exhibit 1 at 8.

These are merely examples of some of the many inadmissible hearsay statements of law enforcement officers that are included in the Government's proposal, but the Government's proposal is filled with such assertions. The Government offers no reason to believe it can admit the hearsay statements of the interrogating law enforcement officers in this case. The Government must further redact its transcript to be limited to Mr. Andrade's admissions, and to exclude the hearsay statements of law enforcement officers.

    **4. Mr. Andrade's Statements About the Double Homicide Must be Excluded as Irrelevant "Hearsay Within Hearsay" Without an Applicable Exception.**

The Government does not allege that Mr. Andrade was involved in or present for the double homicide charged in this case. Thus, Mr. Andrade's statements about the double homicide—which would be admissible only against him, if admissible at all—are irrelevant to this case. The only reason for the Government to attempt to admit these statements is in the hopes that the jury will use them to convict Mr. Andrade's *codefendants* of the double homicide, a purpose specifically disallowed by the Confrontation Clause. But in addition to their irrelevance, the Government must concede that Mr. Andrade lacks personal knowledge of the double homicide. Notwithstanding that fact, the Government's transcript includes Mr. Andrade's account of the double homicide, an account that he admits is based on hearsay from

---

[1] Notably, Carlos Turcios Villatoro filed a motion in limine asking the Court to exclude this "book" from trial. Doc. 353. Mr. Arevalo joined that motion and raised additional concerns about the multiple layers of hearsay involved. Doc. 360. The Government then filed a response indicating that it would not seek to admit the ledger, and this Court entered an Order excluding the notebook from trial. Doc. 408.

an unidentified source or sources. Andrade's statements about the double homicide are thus inadmissible hearsay within hearsay for which no exception applies.

When shown photographs of the decedents, Andrade repeatedly states that he does not know them but has seen them on the news. Exhibit 1 at 77–86. Mr. Andrade further states that he is "not going to make anything up because I wasn't there. I don't know what happened or how it happened." Exhibit 1 at 130. Mr. Andrade then implicates "Serio, Blue and Oculto" as having been present for the double homicides. *Id*. When asked how he knows this, however, Andrade answers, "word gets around among us." *Id*. at 131. Andrade then continues to recount information about the double homicide that he obtained from unknown source(s). *Id*. at 131–38. Andrade never identifies who gave him this hearsay information about the double homicide, and thus there is no way to know how many levels of hearsay are involved. In other words, there is no way to know the declarant who provided the information to Andrade was himself just recounting hearsay.

"Hearsay within hearsay is not excluded by the rule against hearsay *if each part of the combined statements conforms with an exception to the rule*." Fed. R. Evid. 805 (emphasis added). That is, to admit hearsay within hearsay, the proponent must have an applicable exception for each layer of hearsay. In this case, there is no exception that could be applied to admit Andrade's reporting of *hearsay statements made to him by unidentified, unknown sources*. *See United States v. Earth*, 984 F.3d 1289, 1298 (8th Cir. 2021) (noting that hearsay within hearsay statements must be analyzed "at each level"); *United States v. Cummings*, 858 F.3d 763 (2d Cir. 2017) (reversing conviction due to the admission of hearsay within hearsay without an applicable exception). Because Mr. Andrade had no personal knowledge of the double homicides and was merely recounting information provided by an unknown number of

9

unidentified hearsay declarants, his statements about the double homicide are inadmissible in this case.

## CONCLUSION

WHEREFORE, Mr. Arevalo respectfully objects to the Government's *Bruton* proposal.

Respectfully submitted,
CRISTIAN AREVALO ARIAS

s/ Bernadette Donovan

Bernadette M. Donovan
VA BAR 82054
Donovan & Engle, PLLC
1134 East High Street, Unit A
Charlottesville, VA 22902
Office 800-428-5214
Fax 434-465-6866
bernadette@donovanengle.com

Daniel Hutcheson Goldman
VA BAR 82144
The Law Office of Daniel Goldman, PLLC
421 King Street, Suite 505
Alexandria, VA 22314
Office 202-677-5709
Fax 833-523-2310
dan@dangoldmanlaw.com

*Counsel for Cristian Arevalo Arias*

## CERTIFICATE OF SERVICE

I, Bernadette Donovan, Esq., hereby certify that on this September 5, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. A Notice of Electronic Filing will be served on:

John C. Blanchard
Maureen Cain
Matthew K. Hoff
Assistant United States Attorneys
Attorney for the United States

United States Attorney's Office
2100 Jamieson Avenue
Tel: 703-299-3700
Fax: 703-299-3980
John.blanchard@usdoj.gov
Maureen.cain@usdoj.gov
Matthew.hoff2@usdoj.gov

s/ <u>Bernadette M. Donovan</u>