IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | 1:21-CR-260 |
| | : | |
| CRISTIAN AREVALO ARIAS, | : | |
| | : | |
| Defendant. | : | Honorable Leonie M. Brinkema |
| | : | |

**REPLY IN SUPPORT OF MOTION TO COMPEL GOVERNMENT TO REMEDY
"NEEDLE IN A HAYSTACK" JENCKS PROVISION**

If the government's response proves anything, it is how easy it would be for the government to comply with an order to provide a meaningful Jencks production. The government's response demonstrates a deep understanding of its voluminous discovery productions, and the ease with which it could provide an index of Jencks materials. The only reason the government does not want to do this is that it benefits from keeping such materials hidden in the haystacks of discovery in this case. For the following reasons, the government's arguments are unavailing.

*First*, the government's description of its discovery productions is highly selective. The government discusses only the two productions it made in April and July 2022. Doc. 512 at 3. The government also attaches two discovery indices, one from July 2022 and one from November 2022. Doc. 512 at 2 (Exhibits 2 and 3). The *indices* for those productions alone are 100 pages. But the government also omits any mention of the extensive later discovery productions in this case. For example, the government's March 2023 production was the largest in this case at 2.51 TB, an extraordinary amount of discovery. Since then, the government has provided multiple additional discovery disclosures, making it impossible for undersigned counsel

1

to catch up. At the same time, counsel have had no way to identify Jencks material during their ongoing review, given the extensive redactions and a lack of knowledge of which of the many persons interviewed in this case would be government witnesses. Thus, it is not the case that the defense "has had more than sufficient time" to identify the Jencks materials in the government's avalanche of discovery.

*Second*, the government ignores the vast disparity in resources between the parties. The federal government of the United States of America is the most powerful entity in the world. As such, its prosecution teams have extensive resources such as full-time paralegals, numerous translators working all over the country, dedicated case agents, the ability to tap and retain expert assistance without petitioning for it, and task forces that bolster extraordinary federal resources with local support. Indeed, the government's press conference regarding this case identifies numerous agencies assisting the prosecution, and lauds its ability to "leverage[] the strengths of federal, state, and local law enforcement agencies against criminal networks."[1]

> Assistant U.S. Attorney John Blanchard, Special Assistant U.S. Attorney Rachel Roberts, and Trial Attorney Matthew Hoff from the Department of Justice Criminal Division's Organized Crime and Gang Section are prosecuting the case.
>
> Significant assistance was provided by our partners, including the Northern Virginia Violent Gang Safe Streets Task Force, the Northern Virginia Regional Gang Task Force, ICE/ERO, DEA, ATF, and the United States Marshal Service. The Office of the Commonwealth's Attorney in Prince William County also provided significant assistance.
>
> This prosecution is part of an Organized Crime Drug Enforcement Task Forces (OCDETF) investigation, Operation City of Bridges. OCDETF identifies, disrupts, and dismantles the highest-level drug traffickers, money launderers, gangs, and transnational criminal organizations that threaten the United States by using a prosecutor-led, intelligence-driven, multi-agency approach that leverages the strengths of federal, state, and local law enforcement agencies against criminal networks.

In contrast, Mr. Arevalo is an indigent defendant with court-appointed counsel. Thus, the time that is sufficient for the government is not necessarily sufficient to prepare a defense. And of course, the government possessed, reviewed, and analyzed its discovery materials long before

---

[1] United States Department of Justice, Press Release, "MS-13 Members and Associates Indicted in Racketeering, Narcotics, and Multiple Murder Conspiracies," https://www.justice.gov/usao-edva/pr/ms-13-members-and-associates-indicted-racketeering-narcotics-and-multiple-murder (Jan. 6, 2022) (last accessed Sept. 10, 2023).

providing them to the defense teams.

*Third*, the government's screenshots of discovery folders suggest that their disclosures are organized to make materials easy to find. But the government ignores the fact that its folders are full of documents labeled only by bates stamp, rather than an identifier such as "2021-08-03 John Doe Interview." For example, a screenshot of just part of the contents of a typical subfolder looks like this:



The lack of a descriptive file naming convention makes it impossible for defense counsel to

separate the wheat from the chaff without opening each document and analyzing its contents.[2] Additionally, some single documents are comprised of over 100 pages of police reports in which multiple redacted witness statements may be buried. It it hard to believe that the prosecuting agency involved in an investigation of this size does not already have discovery identified or indexed in a more meaningful, witness-specific fashion.

*Fourth*, the government ignores the fact that it chose to charge both Mr. Arevalo and Mr. Menjivar with homicides less than three months before trial. Having made this choice, the government then also chose to oppose both men's motions for continuances. Together, these decisions smack of gamesmanship designed to put the accused on their heels right before a trial in which they faces mandatory life sentences. And now, the government opposes Mr. Arevalo's efforts to identify the Jencks materials that the government admits are scattered throughout its numerous discovery productions. Given the government's own tactical decisions in this case, it is poorly positioned to claim that Mr. Arevalo has had a sufficient amount of time, particularly with respect to the Tate homicide.[3]

*Fifth*, and relatedly, the government now argues that the Court has no authority to order a meaningful Jencks production. *See* Doc. 512 at 5–6. But the government did not object to the Court's Jencks order, perhaps because it understood that the Court was attempting to remedy

---

[2] The government has its own reasons for describing certain reverse proffers. But this is irrelevant because reverse proffers are dedicated to showing a selection of the government's evidence *against* a defendant, not showing the Jencks or *Giglio* materials that would help a defendant.

[3] Speaking of tactical decisions, the government's unusual decision not to obtain witness's jail records and recordings forced Mr. Arevalo to subpoena them himself. Prosecuting authorities routinely obtain these materials and provide them to defense teams, likely because they almost always contain exculpatory information. The fact that Mr. Arevalo had to subpoena these records himself weighs for, not against, his request that the government not be permitted for further bog him down in searching for hidden Jencks material.

some of the harm caused by the government's delayed homicide indictments.  Having made no objection to the Court's order, the government cannot now assert that the Court lacks authority to interpret that order.  And all Mr. Arevalo is asking is that the Court instruct the government that the requirement to produce Jencks thirty days before trial is not fulfilled by telling the defense teams that "throughout the discovery process, the government has produced Jencks material, including, but not limited to, FBI 302s, police reports, rough notes, search warrant affidavits, recorded statements, statements contained in phone extractions, Facebook communications, and expert reports.  We are not reproducing Jencks material that has already been provided to you."

*Finally*, the government ignores the substantial overlap between Jencks materials and *Brady v. Maryland*, 373 U.S. 83 (1963).  Prior witness statements are often replete with inconsistent statements and other exculpatory information, and courts have repeatedly ordered the government to identify exculpatory information in voluminous productions.  *See, e.g.*, *United States f. Saffarinia*, 424 F. Supp. 3d 46 (D.C. Cir. 2020) (requiring the government to identify *Brady* materials in its "voluminous case files"); *United States v. Blankenship*, No. 5:14-cr-244, 2015 WL 3687864, at *6 (S.D. W.Va. June 12, 2015) ("The Court finds that the United States should specifically designate any known *Brady* material as such and disclose the same to defense counsel."); *United States v. Hsia*, 24 F. Supp. 2d 14, 29–30 (D.D.C. 1998) ("The government cannot meet its *Brady* obligations by providing [the accused] with access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack."); *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) ("[T]he government cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials."); *United States v. Cutting*, No. 14-cr-00139, 2017 WL 132403 (N.D. Cal. Jan. 12, 2017) (ordering the government to identify *Brady* material in its discovery provisions); *see also*

*United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided . . . ."). These cases also demonstrate the Court's authority to order the relief requested.

In the words of one district court, "[i]f the government professes this inability to identify the required information after five *years* of pre-indictment investigation, its argument that the defense can "easily" identify the materials buried within the mass of documents within *months* of post-indictment activity is meritless." *United States v. Salyer*, No., 2010 WL 3036444, at *5 (E.D. Cal. 2010). For example, the government complains that two of its witnesses "have written hundreds of communications (i.e., FBI FD-302s, FD-1057s, etc.) in this case." Doc. 512 at 6. But this just proves how difficult it would be for Mr. Arevalo to identify and extract the Jencks material, while the government appears to have already identified and organized such prior witness statements for itself.

## CONCLUSION

WHEREFORE, Mr. Arevalo respectfully moves this Honorable Court to (1) make a meaningful production of the Jencks material that is scattered throughout discovery provisions or (2) provide the defense with an index that includes the Bates stamps of such scattered Jencks materials.

Respectfully submitted,
CRISTIAN AREVALO ARIAS

s/ Bernadette Donovan

Bernadette M. Donovan
VA BAR 82054
Donovan & Engle, PLLC
1134 East High Street, Unit A
Charlottesville, VA 22902

Office 800-428-5214
Fax 434-465-6866
bernadette@donovanengle.com

Daniel Hutcheson Goldman
VA BAR 82144
The Law Office of Daniel Goldman, PLLC
421 King Street, Suite 505
Alexandria, VA 22314
Office 202-677-5709
Fax 833-523-2310
dan@dangoldmanlaw.com

*Counsel for Cristian Arevalo Arias*

### CERTIFICATE OF SERVICE

I, Bernadette Donovan, Esq., hereby certify that on this September 10, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. A Notice of Electronic Filing will be served on:

John C. Blanchard
Maureen Cain
Matthew K. Hoff
Assistant United States Attorneys
Attorney for the United States
United States Attorney's Office
2100 Jamieson Avenue
Tel: 703-299-3700
Fax: 703-299-3980
John.blanchard@usdoj.gov
Maureen.cain@usdoj.gov
Matthew.hoff2@usdoj.gov

s/ Bernadette M. Donovan