IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:21-CR-260 |
| JAIRO AGUILERA SAGASTIZADO, ET AL., | Hon. Leonie M. Brinkema |
| *Defendants*. | Trial Date: January 8, 2023 |

**GOVERNMENT'S OBJECTIONS TO
THE COURT'S INTENTION TO SEVER TRIAL DEFENDANTS**

On December 15, 2023, the Court entered an Order informing the parties that, absent compelling objections, the Court intended to sever the trial defendants and conduct two separate, back-to-back trials. As explained below, the United States respectfully objects to the Court's plan on the grounds that it would be inconsistent with binding precedent governing joinder and severance of defendants in racketeering prosecutions. The United States further objects to the Court's plan because severing the trial defendants and conducting two trials would significantly burden the Court's docket, create witness security issues, cause additional pain to the victims' families by requiring them to go through two trials, and require the unnecessary and duplicative expenditure of government and Court resources to present virtually identical trials to two different juries. Accordingly, the United States respectfully requests that the Court allow this case to proceed to a single trial.

**Relevant Background**

Defendants Marvin Menjivar Gutierrez ("Menjivar"), Melvin Canales Saldana ("Canales"), Cristian Ariel Arevalo Arias ("Arevalo"), Carlos Jose Turcios Villatoro ("Villatoro"),

Manilester Andrade Rivas ("Andrade"), and Jairo Gustavo Aguilera Sagastizado ("Aguilera") are charged in Count One of the Second Superseding Indictment with conspiring to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d) (hereinafter, "RICO Conspiracy"), by agreeing to engage in a pattern of racketeering activity from in and around 2017 until at least October 2020.  *See* ECF 295.  The pattern of racketeering activity consisted of multiple acts involving murder, in violation of Virginia law, and multiple offenses involving drug trafficking, in violation of 21 U.S.C. §§ 841 and 846.  *Id.*  The Second Superseding Indictment also charges the individual violent crimes and drug offenses committed by the defendants and their co-conspirators as part of the pattern of MS-13's racketeering activity and as part of the gang's means and methods of operation as well as separate substantive offenses.  The four murders at the heart of this case are charged under the Violent Crimes in Aid of Racketeering ("VICAR") statute, *see* ECF 295 at Counts 3, 4, 6, 9, 10, 12, and 13, and 18 U.S.C. § 924(c) and (j), *see id.* at Counts 5, 7, 11, and 14.  Finally, the Second Superseding Indictment also charges Arevalo and Villatoro with witness tampering by killing, in violation of 18 U.S.C. §§ 1512(a)(1)(c).  *Id.* at Count 8.

**Legal Overview**

When, in 1970, it enacted the Racketeer Influenced and Corrupt Organizations ("RICO") Act, Congress "clearly demonstrate[d]" its intention "to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots."  *Russello v. United States*, 464 U.S. 16, 26-27 (1983).  Indeed, Congress expressly directed that "[t]he provisions of this Title shall be liberally construed to effectuate its remedial purposes," 84 Stat. 947, and courts have consistently heeded this direction.  *See, e.g.*, *Russello*, 464 U.S. at 26-27; *United States v. Turkette*, 452 U.S. 576, 587 (1981).

2

Section 1962(d) makes it unlawful, *inter alia*, to violate § 1962(c).  Section 1962(c), in turn, provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Thus, to establish a defendant's guilt in a RICO Conspiracy prosecution, the United States must prove beyond a reasonable doubt:

(1) That the charged enterprise was or would be established;

(2) That the charged enterprise was or would be engaged in, or its activities affected or would affect, interstate or foreign commerce;

(3) That the defendant knowingly agreed that a co-conspirator was or would be employed by or associated with the enterprise;

(4) That the defendant knowingly agreed that a co-conspirator would conduct or participate, either directly or indirectly, in the conduct of the affairs of the enterprise; and

(5) That the defendant agreed a co-conspirator – not necessarily the defendant – did or would knowingly participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as described in the indictment; that is, a co-conspirator did or would commit at least two acts of racketeering activity.

2B O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* §§ 56:03, 56:11 (6th ed. Updated August 2023) (modified); *see also United States v. Cornell*, 780 F.3d 616, 620 (4th Cir. 2015) (condensing elements of RICO Conspiracy).

RICO Conspiracy sweeps broadly – a defendant must know only "the general nature of the conspiracy and that the conspiracy extends beyond his individual role." *United States v. Rastelli*, 870 F.2d 822, 828 (2d Cir. 1989).  RICO Conspiracy does not require that the conspirator agree to personally commit the substantive offense.  *Salinas v. United States*, 522 U.S. 52, 62-66 (1997); *see also United States v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012).  Adopting the theory of co-

3

conspirator liability enumerated in *Pinkerton v. United States*, 328 U.S. 640, 646 (1946), the Supreme Court observed that "[t]he partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other." *Salinas*, 522 U.S. at 63.  No overt act is required to satisfy a RICO Conspiracy, nor is the government required to prove that each conspirator agreed that he would be the one to commit two predicate acts.  *Id.*; *see also United States v. Glecier*, 923 F.2d 496, 498-500 (7th Cir. 1991).  Indeed, it is not necessary to prove that any defendant committed any substantive RICO violation as a result of the conspiracy.  *See United States v. Randall*, 661 F.3d 1291, 1297 (10th Cir. 2011); *United States v. Applins*, 637 F.3d 59, 80-82 (2d Cir. 2011).

In the federal system, it is well settled that joint trials are favored because they "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial," *United States v. Lane*, 474 U.S. 438, 449 (1986), and generally promote judicial and prosecutorial efficiency, *United States v. Rushner*, 966 F.2d 868, 877 (4th Cir. 1992).  "[J]oinder is the rule rather than the exception because the prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources suggests that related offenses should be tried in a single proceeding." *United States v. Mir*, 525 F.3d 351, 357 (4th Cir. 2008) (internal quotation marks and citation omitted).  Thus, severance should only occur where the dominant public interest in joint trials is outweighed by substantial prejudice, arising from case-specific problems, which will result in a manifestly unfair trial. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see also United States v. Hayden*, 85 F.3d 153, 160 (4th Cir. 1996).  The presumption of joint trials is particularly applicable in conspiracy cases. *See, e.g.*, *Zafiro*, 506 U.S. at 537-38; *United States v. Akinkoye*, 185 F.3d 192, 197 (4th Cir. 1999) ("Generally, we adhere to the rule that defendants charged with participation in the same

4

conspiracy are to be tried jointly."). This presumption comports with Fed. R. Crim. P. 8(b), which provides for joint trials if defendants "are alleged to have participated in . . . the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b).

### Argument

When defendants are properly joined under Fed. R. Crim. P. 8(b), as they are in this case, severance under Fed. R. Crim. P. 14 is justified "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539; *see also United States v. Qazah*, 810 F.3d 879, 891 (4th Cir. 2015). In its December 15 Order, the Court explicitly stated that "the Court's plan for the layout of the courtroom and seating of attorneys and clients would adequately protect defendants' rights to a fair trial."[1] ECF 713. Nevertheless, the Court stated that it intended to sever the trial defendants because holding a single trial would be "logistically complicated." *Id.* Respectfully, this is not the applicable standard, and the Court's Order is in conflict with the standard articulated by the Supreme Court in *Zafiro*.

As explained above, all six trial defendants are charged with agreeing that at least one person would commit two of the racketeering acts described in the Second Superseding Indictment. This means that, for example, defendant Canales could be acquitted of aiding and abetting E.L.T.'s VICAR murder and still be found guilty of Count One if the jury were to find he

---

[1] The Alexandria Division of this Court is well acquainted with multi-defendant MS-13 murder trials and has successfully conducted such trials in ways that respect the defendants' trial rights while balancing spatial courtroom limitations. *See United States v. Contreras-Aguilar, et al.*, No. 1:18-cr-123-RDA (five trial defendants, three of whom had two attorneys and two of whom had three attorneys, tried in a joint trial); *United States v. Cruz, et al.*, No. 1:14-cr-306-LO (six trial defendants tried in a joint trial). Notably, both of the aforementioned trials were conducted in courtrooms configured virtually identical to the courtroom in which the trial of the instant matter is scheduled to occur.

agreed that another member of the conspiracy would murder M.B.L. and sell cocaine in furtherance of the MS-13 enterprise. In other words, the defendants cannot simply be sorted by the substantive murders they are alleged to have committed themselves because *all* of the murders are relevant to each defendant's RICO Conspiracy culpability. The government would be legally entitled and required to present evidence of all four murders in both trials.[2]

Moreover, as the Second Superseding Indictment and the government's evidence make clear, all of the defendants and their conduct were connected. For example, the Second Superseding Indictment further alleges that:

- All six of the defendants conspired with one another and other co-conspirators to distribute cocaine in the Eastern District of Virginia and elsewhere. *See* ECF 295 at Count One, ¶ 23(a).

- MS-13 members and associates travelled to and from New York to pick up cocaine from Menjivar, which they then sold in the D.C. metropolitan area. *See id.* at ¶ 23(b).

- "In and around the spring of 2019, defendants [Menjivar and Canales] ordered MS-13 members and associates to begin committing murders so that they could move up in rank within the MS-13 Enterprise. Defendants [Menjivar and Canales] gave MS-13 members and associates three months to find a target and plot that target's murder." *Id.* at ¶ 23(w).

- "Between in and around the spring of 2019 and in and around December 2019, [all six trial defendants and other co-conspirators] conspired to murder several suspected rival gang members and associates, disloyal MS-13 members and associates, and others who disrespected MS-13." *Id.* at ¶ 23(x).

- "Between in and around the spring of 2019 and in and around December 2019, [all six trial defendants] and other MS-13 members and associates kept a list of individuals that the

---

[2] Even if the law were different, the government would still need to present duplicative evidence if the Court were to schedule back-to-back trials. The United States would present crime scene evidence, ballistics evidence, medical examiner testimony, cooperating witness testimony, location information, cell phone evidence, and Facebook data in connection with the murder of E.L.T. in its trial against defendants Canales and Andrade, and would need to turn around and present all of that evidence again in its trial against defendant Arevalo. In this scenario, E.L.T.'s family members would suffer the indignity of having to request twice as much time off from work just to endure the pain of hearing and seeing evidence of E.L.T.'s slaying.

gang planned to kill and took steps to surveil and track those intended targets." *Id.* at ¶ 23(y).

- "On or about June 24, 2019, defendant [Menjivar] advised co-conspirator [Mario Guevara Rivera (hereinafter, "Guevara")] that Menjivar would decide if Guevara and defendants [Arevalo] and [Villatoro] were going to be credited with two murders and receive a promotion in rank within the gang." *Id.* at ¶ 23(mm).

- "On or about June 29, 2019, defendant [Menjivar] told co-conspirator [Guevara] that he needed Guevara to commit another murder within the next three months and that he wanted Guevara and defendants [Andrade] and [Aguilera] to rise in rank and all be promoted at the same time." *Id.* at ¶ 23(rr).

- "On or about June 29, 2019, co-conspirator [Guevara] told defendant [Menjivar] that there were plenty of available victims in the area for when defendant [Aguilera], who resided in New York, came to the Virginia area." *Id.* at ¶ 23(ss).

- "On or about August 31, 2019, [all trial defendants except Menjivar] and other members and associates of MS-13 . . . gathered at a park in Prince William County, Virginia to celebrate the addition of new *chequeos* to STLS." *Id.* at ¶ 23(aaa).

The Second Superseding Indictment also alleges that all six trial defendants conspired to distribute more than 500 grams of cocaine. As a result, if the Court were to hold two trials, the United States would be forced to present testimony and evidence of the numerous controlled purchases mentioned in subparagraphs 23(c) through 23(u) of Count One twice. The government would also need to present evidence of data extracted from cell phones seized in residential search warrants and drug ledgers delineating the amount of cocaine sold and the amount of money owed to the gang in both trials. Cooperating witnesses would have to testify twice about drug deals they conducted, and the same law enforcement officials would need to testify twice about controlled purchases that law enforcement conducted with defendants Canales, Andrade, Arevalo, and others.[3]

---

[3] It should be noted that each time defendant Arevalo sold drugs to law enforcement, the deals had been arranged via telephone with defendant Canales, yet the Court is contemplating severing those two defendants.

7

The logistical complications presented by a six-defendant trial pale in comparison to those that will be created if the Court severs the defendants. Dividing this case into separate trials will consume more of the Court's docket, as doing so would convert one four-week trial into two four-week trials.[4] This is so because all of the defendants' conduct is interwoven, and the nature of the evidence is such that the government's trial exhibit binders (of which there are presently twelve volumes) do not pertain to just one defendant and/or just one crime. Severing the defendants would also nearly double the cost to the taxpayer, as out-of-state incarcerated witnesses would need to be transported to trial multiple times, out-of-state expert witnesses testifying for the government and the defendants would need to travel to Alexandria multiple times, law enforcement officers would need to come to court and present the same testimony, and interpreters would need to spend even more time in court. Attempting to split the case in two would also require jurors (pulled from two separate venires) to hear the exact same testimony from the exact same witnesses.

In this case, a joint trial would unquestionably serve Rule 8's purpose of promoting judicial economy. As already mentioned, the Second Superseding Indictment alleges that the defendants are members and/or associates of the same racketeering enterprise, MS-13. There is substantial overlap in the evidence and witnesses upon which the government will rely to prove not only the substantive offenses charged in the indictment, but also the existence, purpose, and rules of MS-13 more generally. "Particularly in cases like this one, where a primary focus of the trial [will be]

---

[4] While the Court believes its current plan would allow "all defendants to be tried within the currently scheduled time frame," the United States does not see any way that it could possibly try either case in two weeks. ECF 713. While the Eastern District of Virginia rightly prides itself on its efficiency and ability to dispense justice expediently, the government owes it to the victims and their families to present the case in a way that provides the jury with a complete picture of the crimes charged and the evidence to which they are entitled (and that they need to be unanimously satisfied that the government has proved each of the defendant's guilt beyond a reasonable doubt).

the interwoven relationships among defendants, separate trials would be repetitive, requiring witnesses to provide the same testimony many times." *United States v. Chavez*, 894 F.3d 593, 605 (4th Cir. 2018). A consolidated trial would thus avoid duplicative testimony and result in significant efficiency gains.

      The United States also fears that conducting two trials will increase the potential for juror confusion and exacerbate security risk. Regarding the former, severing the defendants would mean that at each trial the jurors would repeatedly hear references to individuals who are not on trial or testifying as witnesses. The confusion among jurors that this will spawn will only be compounded when they are instructed that defendants seated at counsel table can be deemed legally responsible for acts those missing individuals took in furtherance of the charged conspiracies. With respect to security concerns, holding two trials would require incarcerated, cooperating witnesses to be transported numerous times, increasing the risk to these witnesses' safety (to say nothing of the burden on the United States Marshals Service). Moreover, if the Court divvies up the defendants in the manner suggested in its December 15 Order, it will mean that the defendants charged with witness tampering by killing will receive the government's witness list several weeks before they stand trial.

      \*     \*     \*

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court not deviate from its original plan to preside over a single joint trial of the defendants remaining in this case.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
John C. Blanchard
Maureen C. Cain
Assistant United States Attorneys

Matthew K. Hoff
Department of Justice Trial Attorney
Violent Crime and Racketeering Section

## **CERTIFICATE OF SERVICE**

I certify that on December 19, 2023, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will cause a true and accurate copy of this document to be transmitted to counsel of record.

By: _____/s/_____

John C. Blanchard
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3999
Fax:   (703) 299-3980
John.Blanchard@usdoj.gov