IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAIRO AGUILERA SAGASTIZADO, ET AL.,<br><br>*Defendants*. | **FILED UNDER SEAL**<br><br>No. 1:21-CR-260-LMB<br><br>Hon. Leonie M. Brinkema<br><br>Trial Date: January 8, 2024 |

**GOVERNMENT'S TRIAL BRIEF ON**
**ADMISSIBILITY OF OUT-OF-COURT STATEMENTS**

At each trial, the government will not only be moving to admit exhibits that contain recorded statements, but it will also elicit testimony from witnesses regarding statements made by the defendants and their co-conspirators. To preview the evidentiary issues for the Court and to provide necessary background for the Court's trial determinations, the government submits this memorandum addressing the types of statements it will seek to introduce and the various bases for admissibility it intends to invoke.

The government will not attempt to list every out-of-court statement here but respectfully notes that it intends to introduce statements that individually fall into at least one the following categories: (1) statements that will not be offered for the truth of the matter asserted, but rather to explain subsequent actions; (2) communications between the defendants and their co-conspirators discussing their motives for committing charged crimes and reflecting their plans and means to effectuate those crimes; (3) communications among the defendants and their co-conspirators about the crimes and their participation in them as well as their promotions in rank as a result of such

participation; (4) statements made by the defendants and their co-conspirators about their positions in the MS-13 enterprise, their allegiance to MS-13, and their plan to commit racketeering offenses; and (5) statements made by some of the defendants to law enforcement after waiving their *Miranda* rights, including incriminating statements and false exculpatory statements.

## RELEVANT BACKGROUND

Defendants Marvin Menjivar Gutierrez ("Menjivar"), Melvin Canales Saldana ("Canales"), Cristian Ariel Arevalo Arias ("Arevalo"), Carlos Jose Turcios Villatoro ("Villatoro"), Manilester Andrade Rivas ("Andrade"), and Jairo Gustavo Aguilera Sagastizado ("Aguilera") are charged in Count 1 of the Second Superseding Indictment with conspiring to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d), by agreeing to engage in a pattern of racketeering activity from in and around 2017 until at least October 2020. *See* ECF 295. The pattern of racketeering activity consisted of multiple acts involving murder, in violation of Virginia law, and multiple offenses involving drug trafficking, in violation of 21 U.S.C. §§ 841 and 846. *Id.* The Second Superseding Indictment also charges the individual violent crimes and drug offenses committed by the defendants and their co-conspirators as part of the pattern of MS-13's racketeering activity and as part of the gang's means and methods of operation as well as separate substantive offenses. The four murders at the heart of this case are charged under the Violent Crimes in Aid of Racketeering ("VICAR") statute, *see* ECF 295 at Counts 3, 4, 6, 9, 10, 12, and 13, and 18 U.S.C. § 924(c), (j), *see id.* at Counts 5, 7, 11, and 14.

Some of the government's most compelling evidence consists of the non-testimonial communications of the defendants and their co-conspirators, both before and after the murders. In particular, data forensically extracted from cell phones seized from the defendants and their co-conspirators, including text messages and audio recordings exchanged via WhatsApp, show how these individuals discussed their membership in the MS-13 Enterprise with one another and others.

2

Moreover, these WhatsApp conversations are replete with the defendants' admissions regarding their own participation in the charged crimes. For instance, the defendants and their co-conspirators frequently discuss obtaining, transporting, and selling cocaine. Beginning in the spring of 2019, the defendants and their co-conspirators frequently discussed seeking out individuals to murder (and efforts they undertook to locate and kill rival gang members) so that they could move up in rank. Most critically, the defendants and their co-conspirators discussed committing the murders charged in the Second Superseding Indictment prior to and immediately after they occurred.

At trial, the government intends to offer these and similar non-testimonial out-of-court statements against all of the defendants.[1] As will be discussed further below, the non-testimonial statements the government will seek to introduce are admissible on several grounds and do not violate the Confrontation Clause. First, because the Confrontation Clause only applies to testimonial statements, it poses no bar to the non-testimonial and incriminating statements the defendants and their co-conspirators made before their arrests. Second, many of these statements are admissible because the declarants, all members of a conspiracy, made the statements in furtherance of the conspiracy, and, as such, the statements are not hearsay under Rule 801(d)(2)(E), irrespective of whether the declarant is a defendant, a cooperating witness, or a non-testifying co-conspirator. Third, some of the statements will not be offered for their truth and, as a result, are not hearsay under Rule 801(c). Fourth, many of the statements made by the defendants inculpate themselves and others, rendering them admissible against all of the defendants as statements

---

[1] The government will offer these statements by moving to admit the relevant records, which are in Spanish, as well as English translations of the records prepared by an FBI Language Specialist who the government has noticed its intention to tender as an expert witness. During each trial, the government anticipates moving for the admission of scores of such records.

against the declarant's penal interest pursuant to Rule 804(b)(3).  Lastly, other non-testimonial

statements are admissible as adoptive admissions under Rule 801(d)(2)(B).

The government will also seek to admit statements that some of the defendants made to

law enforcement following their arrests.  All of these statements are admissible as evidence against

the declarant-defendants as opposing party statements.  *See* Fed. R. Evid. 801(d)(2)(A).  Those

that constitute "false exculpatory" statements, however, will also be admissible evidence against

the declarant's co-defendants.  This is because the Confrontation Clause does not foreclose the use

of testimonial statements for purposes other than establishing the truth of the matter asserted.

Each ground for admissibility will be discussed in turn.  In so doing, the government

distinguishes between non-testimonial and testimonial statements.

<u>**NON-TESTIMONIAL STATEMENTS**</u>

**I.      The Confrontation Clause Does Not Bar the Admission of Non-Testimonial
         Out-of-Court Statements.**

As described above, the government will seek to introduce at trial prior statements made

by the defendants and their co-conspirators during the life of the racketeering conspiracy, including

statements made by declarants who will not be testifying in the government's case-in-chief.

Although none of the parties will have an opportunity to question the declarant about such

statements, the admission of these statements does not violate the Sixth Amendment's

Confrontation Clause because the statements are not testimonial.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy

the right . . . to be confronted with the witnesses against him."  This provision bars the admission

of "*testimonial* statements of a witness who did not appear at trial unless he was unavailable to

testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v.

Washington*, 541 U.S. 36, 53–54 (2004) (emphasis added).  In a specific application of this rule,

4

the Supreme Court held in *Bruton v. United States* that, under certain circumstances, admission of a non-testifying co-defendant's confession inculpating a defendant violates that defendant's Sixth Amendment confrontation rights because the defendant has no opportunity to cross-examine the declarant.  391 U.S. 123, 126 (1968).

The recorded statements at issue here are non-testimonial and therefore implicate neither *Crawford* nor *Bruton*.  "As *Crawford* and later Supreme Court cases make clear, a statement must be 'testimonial' to be excludable under the Confrontation Clause."  *United States v. Dargan*, 738 F.3d 643, 650 (4th Cir. 2013).  "The primary determinant of a statement's testimonial quality is whether a reasonable person in the declarant's position would have expected his statements to be used at trial—that is, whether the declarant would have expected or intended to bear witness against another in a later proceeding."  *Id.* (internal quotation marks omitted).

Here, the declarants made the statements at issue to individuals the declarants believed to be trusted criminal associates.  These statements inculpate the declarants and fellow gang members in serious crimes, including murder.  No reasonable person in the declarants' position would have expected or intended that these statements be used in a criminal prosecution, and the statements therefore do not qualify as "testimonial."  *See, e.g.*, *United States v. Mathis*, 932 F.3d 242, 255–56 (4th Cir. 2019) (holding that co-conspirator statements in furtherance of a conspiracy were non-testimonial because they were not intended for use at trial); *United States v. Jordan*, 509 F.3d 191, 201 (4th Cir. 2007) (holding that statements to friends or acquaintances were non-testimonial when not made in anticipation of use at trial).

Because the declarants' statements about their criminal gang activities to their co-conspirators are non-testimonial, their admission does not violate the defendants' rights under the Confrontation Clause.  *Crawford*, 541 U.S. at 68.  Furthermore, because *Bruton* merely "espoused

a prophylactic rule designed to prevent a specific type of Confrontation Clause violation," statements that "do not implicate the Confrontation Clause *a fortiori* do not implicate *Bruton*." *Dargan*, 738 F.3d at 651. Thus, the conclusion that the declarants' statements are non-testimonial "suffices to dispatch [any] *Bruton* argument as well." *Id*.

None of the incriminating statements that the defendants and their co-conspirators made about gang membership, drug dealing, and murder were made for the primary purpose and in the context of creating an out-of-court record to prove facts relevant to a criminal prosecution. Accordingly, the Sixth Amendment poses no bar to the admission of these recorded statements.

**II.    Co-Conspirator Statements Made in Furtherance of a Conspiracy Are Not Hearsay and Are Admissible Against all of the Defendants.**

The government will also seek the admission of numerous statements made by the defendants and their co-conspirators in furtherance of the conspiracies charged in the indictment, including the broader RICO conspiracy of which all of the defendants were members and which preexisted and continued after the specific violent acts charged in the indictment. These statements are admissible irrespective of whether the declarant is a current defendant, a cooperating witness, or a non-testifying co-conspirator.

Co-conspirator statements have a particular evidentiary significance and may be introduced at any point. *See United States v. Blevins*, 960 F.2d 1252, 1257 (4th Cir. 1992). As the Supreme Court has explained, "[b]ecause they are made while the conspiracy is in progress, such statements provide evidence of the conspiracy's context that cannot be replicated, even if the declarant testifies to the same matters in court." *United States v. Inadi*, 475 U.S. 387, 395 (1986).

The standard for admission of a co-conspirator statement is clear in this Circuit: a statement is not hearsay if it is "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy" and is offered against the party. *United States v. Graham*, 711 F.3d 445, 453

6

(4th Cir. 2013) (citing Fed. R. Evid. 801(d)(2)(E)). For a statement to qualify as an admissible co-conspirator statement under Rule 801(d)(2)(E), there "must be evidence [1] that there was a conspiracy involving the declarant and the nonoffering party, and [2] that the statement was made 'during the course and in furtherance of the conspiracy.'" *United States v. Ayala*, 601 F.3d 256, 267–68 (4th Cir. 2010) (quoting *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)).

The party seeking to introduce the co-conspirator statement bears the burden of establishing these preliminary facts for admission but, significantly, need do so only by a preponderance of the evidence. *Bourjaily*, 483 U.S. at 175–76. The party seeking introduction must show the existence of the conspiracy and the declarant's role in the conspiracy through independent evidence but may supplement that evidence with the statements of the declarant. *See United States v. Afridi*, 241 F. App'x 81, 84 (4th Cir. 2007). Regarding the mechanics of admitting co-conspirator statements, "a trial court is not required to hold a hearing to determine whether a conspiracy exists before admitting statements under [Rule 801(d)(2)(E)], and the court need not explain the reasoning behind the evidentiary ruling." *Graham*, 711 F.3d at 453. In fact, the Fourth Circuit has long rejected the argument that a court must determine the existence of a conspiracy before it admits statements under Rule 801(d)(2)(E). *See Blevins*, 960 F.2d at 1256; *accord United States v. Hines*, 717 F.2d 1481, 1488 (4th Cir. 1983); *United States v. McCormick*, 565 F.2d 286, 289 n.5 (4th Cir. 1978). Moreover, a court may conditionally admit co-conspirators' statements subject to the subsequent satisfaction of the requirements for their admission and, in doing so, the court is not even required to set out on the record any reasons for making this evidentiary ruling. *See Blevins*, 960 F.2d at 1256.[2] In making its admissibility determination, "the court may consider

---

[2] Indeed, the Supreme Court has made clear that under Rule 104(a) of the Federal Rules of Evidence, courts can make decisions on preliminary questions of admissibility of evidence, including co-conspirator statements under Rule 801(d)(2)(E). *See Bourjaily*, 483 U.S. at 180–81.

all evidence before it, whether admissible at trial or not, including the co-conspirator statements sought to be admitted." *United States v. Shores*, 33 F.3d 438, 442 (4th Cir. 1994).

    **A.**        **The Conspiracies Involving the Defendants and their Co-Conspirators**

Although the government believes that the co-conspirator statements it will seek to introduce were made in furtherance of the specific conspiracies to murder and distribute cocaine charged in the indictment, even if the Court were to determine that some of the statements were not made in furtherance of those conspiracies, such statements would nonetheless be admissible under Rule 801(d)(2)(E) because they were made in furtherance of the broader RICO conspiracy charged in Count 1. Under 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of [18 U.S.C. § 1962(c)]." In pertinent part, § 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." "Racketeering activity includes any act or threat involving murder . . . or dealing in a controlled substance, which is chargeable under State law and punishable by imprisonment for more than one year." *United States v. Mouzone*, 687 F.3d 207, 217 (4th Cir. 2012) (internal quotation marks and alterations omitted). To prove a conspiracy under § 1962(d), the government must prove the existence of an agreement between two or more persons to participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity. *See United States v. Simmons*, 11 F.4th 239, 254 (4th Cir. 2021) ("We have said that there are only three essential elements in any § 1962(d) prosecution: (1) that an enterprise affecting interstate commerce existed; (2) that each defendant knowingly and intentionally agreed with another person to conduct or participate in the affairs of the enterprise and (3) that each defendant knowingly and willfully agreed that he

or some other member of the conspiracy would commit at least two racketeering [activities]."
(alteration in original) (internal quotation marks omitted)).

Here, the evidence the government will introduce to prove the conspiracy and substantive counts charged in Counts 2–20 will necessarily establish that all of the defendants were engaged in the broader RICO conspiracy charged in Count 1.  At trial, the government will prove that the defendants are members or associates of MS-13, a racketeering enterprise that promotes and enhances the gang's power, territory, and reputation through the use of violence, including murder and assault with deadly weapons.  It will also prove that the gang directs these acts of violence against rival gang members, individuals who cooperate with law enforcement, and its own members and associates who violate gang rules, among others.  The evidence will further establish that MS-13 members and associates maintain and enhance their own status within the gang by participating in such violent acts.  Lastly, the government's evidence will prove that the defendants agreed to commit at least two racketeering acts.  Accordingly, the government's evidence will establish a RICO conspiracy under § 1962(d) and any statements made in furtherance of that conspiracy are admissible under Rule 801(d)(2)(E).[3]

### B.       Statements Made in Furtherance of a Conspiracy

As regards the second element, a statement by a co-conspirator is made 'in furtherance' of a conspiracy "if it was intended to promote the conspiracy's objectives, whether or not it actually

---

[3] Another point meriting consideration on the topic of co-conspirator statements is that while Rule 801(d)(2)(E) uses the term "conspiracy," it is intended to reach more broadly than criminal conspiracy law.  *See* 30B Jeffrey Bellin, *Federal Practice and Procedure (Evidence)* § 6778 (Apr. 2023) ("Substantive conspiracy laws create criminal penalties for coordinated wrongdoing.  Rule 801(d)(2)(E), on the other hand, addresses teamwork more generally.  For purposes of Rule 801(d)(2)(E), the goal of the identified 'conspiracy' need not be criminal or even illicit. . . . The key is coordinated action." (footnotes omitted)); *see also United States v. El-Mezain*, 664 F.3d 467, 502 (5th Cir. 2011) ("[A]dmissibility under Rule 801(d)(2)(E) does not turn on the criminal nature of the endeavor.  Instead, a statement may be admissible under Rule 801(d)(2)(E) if it is made in furtherance of a lawful joint undertaking." (citation omitted)).

9

has that effect." *Graham*, 711 F.3d at 453; *see also United States v. Smith*, 441 F.3d 254, 262 (4th

Cir. 2006) ("Most courts, including the Fourth Circuit, construe the in-furtherance requirement so

broadly that even casual relationships to the conspiracy suffice to satisfy the exception." (internal

quotation marks omitted)). As a result, in construing the "in furtherance of a conspiracy" language,

courts have admitted statements that "seek[] to induce a coconspirator's assistance," *United States*

*v. James*, 712 F.3d 79, 106 (2d Cir. 2013), "serv[e] to foster trust and cohesiveness," *United States*

*v. Diaz*, 176 F.3d 52, 85 (2d Cir. 1999), identify "participants and their roles in the conspiracy,"

*United States v. Franklin*, 415 F.3d 537, 552 (6th Cir. 2005), "serve to inform a conspirator of the

status of the conspiracy," *United States v. Dawson*, Nos. 95-5146, 95-5342, 95-5152, 95-5187,

1998 WL 188636, at *5 (4th Cir. Apr. 21, 1998) (citing *United States v. Edmond*, 52 F.3d 1080,

1111 (D.C. Cir. 1995)), or "report[] significant events to one of the co-conspirators," *United States*

*v. Tse*, 135 F.3d 200, 209 (1st Cir. 1998)). Indeed, "statements that describe past events are in

furtherance of the conspiracy if they are made . . . simply to keep coconspirators abreast of current

developments and problems facing the group." *United States v. Jefferson*, 215 F.3d 820, 824 (8th

Cir. 2000); *see also United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994) ("Statements relating

past events meet the in-furtherance test if they serve some current purpose in the conspiracy, such

as to 'promote [ ] cohesiveness,' or to provide reassurance to a coconspirator.").

     At trial, the government will offer as evidence statements that are manifestly in furtherance

of a conspiracy. These statements include discussions about the planning and motives behind the

crimes, the identities of the crimes' participants and their respective roles, and details concerning

the manner in which the crimes would occur and how they occurred. The co-conspirators'

statements conveying information regarding the crimes charged in the indictment—including the

purposes, participants, and salient details of these crimes—were made in furtherance of the

conspiracy.  *See Diaz*, 176 F.3d at 85 (determining that declarant's statements that he and defendant committed murders and sold gun afterwards were in furtherance of racketeering conspiracy because, *inter alia*, they "attempted to apprise . . . of the progress or status of the conspiracy").  As a result, these non-testimonial, out-of-court statements are plainly admissible under Rule 801(d)(2)(E).

**III.     Relevant Out-of-Court Statements Not Offered for the Truth are Admissible Because They Are Not Hearsay.**

At trial, the government will also seek to introduce statements made the defendants and others that will not be offered for the truth of the matter asserted.  As a result, the hearsay rule poses no impediment to their admission.

A statement is only hearsay if "a party offers [it] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2).  Examples of permissible purposes for a statement that render it non-hearsay include: (1) to explain why an individual took a particular action or to show its effect on subsequent actions, *see United States v. Davis*, 918 F.3d 397, 401 (4th Cir. 2019); (2) to show the basis for a witness's belief in a particular fact, *see United States v. Hassan*, 742 F.3d 104, 136 (4th Cir. 2014); (3) to show the defendant's knowledge of a particular fact proved through other evidence, *see United States v. Rafiekian*, 991 F.3d 529, 550 (4th Cir. 2021); *United States v. Safari*, 894 F.2d 891, 894 (4th Cir. 1988); (4) to prove the simple fact that the words were spoken at all, *see United States v. Ayala*, 601 F.3d at 272; (5) to demonstrate that a person held a belief at a particular time, *see United States v. Ibisevic*, 675 F.3d 349 (4th Cir. 2012); or (6) to provide context to other admissible statements so that the jury can understand their import and judge their weight, *see United States v. Leake*, 642 F.2d 715, 720 n.6 (4th Cir. 1981). Questions are often non-hearsay unless they are highly accusatory and function as a statement of a factual matter.  *See United States v. Williams*, 445 F.3d 724, 735–36 (4th Cir. 2006).

11

**IV.    Statements Against Penal Interest are Admissible Hearsay Against all of the
Defendants.**

The government will also seek to admit statements made by the defendants and their co-

conspirators inculpating themselves and others in the charged crimes long before they were

arrested and charged with any crimes.  Such statements are admissible against the defendant-

declarant as well as the other defendants he implicated in the murders as statements against the

declarant's penal interest.[4]

Rule 802, the hearsay rule, "is premised on the theory that out-of-court statements are

subject to particular hazards," including dangers of insincerity, ambiguity, erroneous perception,

and faulty memory.  *Williamson v. United States*, 512 U.S. 594, 598 (1994).  The Federal Rules of

Evidence, however, except certain kinds of out-of-court statements—*i.e.*, statements which are

less susceptible to the dangers of hearsay—from the general rule that hearsay is inadmissible.  *See*

*id*.  "Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even

reasonable people who are not especially honest, tend not to make self-inculpatory statements

unless they believe them to be true."  *Id*. at 599.

Rule 804(b)(3) provides that a statement made by an unavailable declarant[5] is admissible

if it meets two criteria.  First, the statement must be "one that 'a reasonable person in the declarant's

---

[4] Of course, a statement made by a defendant is admissible against him as a statement by an
opposing party pursuant to Fed. R. Evid. 801(d)(2)(A).  However, when a statement is admissible
only under Rule 801(d)(2)(A), the Court must give the jury a limiting instruction that the statement
is only to be considered against the defendant who made the statement.  *See United States v.
Benson*, 957 F.3d 218, 229–30 (4th Cir. 2020).  Statements against penal interest, on the other
hand, are admissible against all of the defendants and no limiting instruction is necessary.  *See id*.
at 230 n.10; *see also United States v. Salerno*, 868 F.2d 524, 535 (2d Cir. 1989) ("[I]f the
statements in question met the requirements of Fed. R. Evid. 804(b)(3) as statements against penal
interest, or of Fed. R. Evid. 801(d)(2)(E), they were admissible against all defendants.")

[5] Because the government cannot compel the defendants to testify, they are unavailable under Rule
801(a)(1).  *See Dargan*, 738 F.3d at 649.

position would have made only if the person believed it to be true because, when made, it . . . had

so great a tendency to . . . expose the declarant to civil or criminal liability." *Dargan*, 738 F.3d at

649 (quoting Fed. R. Evid. 804(b)(3)).  Second, the statement must be supported by "corroborating

circumstances" that "clearly indicate [its] trustworthiness."   Fed. R. Evid. 804(b)(3).   If a

declaration meets both criteria, it is a statement against penal interest admissible against the

declarant as well as others implicated by the statement.  *See Dargan*, 738 F.3d at 649–51.

Regarding the first criterion, a declaration qualifies as a statement against penal interest if

it is "individually self-inculpatory."  *Williamson*, 512 U.S. at 599.  "[W]hether a statement is self-

inculpatory or not can only be determined by viewing it in context," as facially-neutral statements

may, when placed in proper context, actually be against the declarant's interest.  *Id.* at 603; *see*

*also* 5 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:129 (4th ed. 2023)

("[I]t is often the case that parts of a single narrative are not against interest when taken by

themselves, but they are nevertheless against interest when taken together with other parts, and

they should be viewed as against interest if they add meaning or dimension to other parts of a

statement that are saliently against interest.").  For instance, statements implicating the declarant

in a criminal conspiracy by linking him to the conspiracy's members may qualify as a statement

against penal interest.  *See Williamson*, 512 U.S. at 603; *see also United States v. Tocco*, 200 F.3d

401, 415 (6th Cir. 2000) (deeming declarant's statements describing his own role in RICO

enterprise, inculpating himself and others as co-conspirators, admissible as against declarant's

penal interest).  Relatedly, statements demonstrating a declarant's insider knowledge of a criminal

organization and its criminal activities are "self-inculpatory."  *See Williamson*, 512 U.S. at 606–

07 (Scalia, J., concurring) ("[I]f a lieutenant in an organized crime operation described the inner

workings of an extortion and protection racket, naming some of the other actors and thereby

inculpating himself on racketeering and/or conspiracy charges, I have no doubt that some of those remarks could be admitted as statements against penal interest."); *United States v. Barone*, 114 F.3d 1284, 1297 (1st Cir. 1997) (providing that declarant's statements "demonstrat[ing] 'an insider's knowledge' of a criminal enterprise and its criminal activities" are admissible).

Statements that would lead investigators to evidence of a crime or provide the police with "significant details about the crime" also qualify as self-inculpatory. *Williamson*, 512 U.S. at 603; *see also United States v. Udeozor*, 515 F.3d 260, 267 (4th Cir. 2008). In *Dargan*, for example, the Fourth Circuit held that a declarant's statements were "intrinsically inculpatory," and therefore admissible against the defendant, where the declarant admitted to participating in a robbery with the defendant and revealed his knowledge of the number and identity of other participants. 738 F.3d at 649–50. Such statements, the court explained, potentially subjected the declarant to conspiracy liability, and were therefore against his penal interests. *Id*.

Similarly, in *United States v. Jordan*, the Fourth Circuit held that a declarant's statements relating her involvement in defendants' plan to lure a drug dealer to an apartment to be robbed, and describing "her observations and actions after she emerged from the bedroom on the night of the [drug dealer's] murder . . . no doubt subjected her to criminal liability so that a reasonable person would not have made them had they been untrue." 509 F.3d 191, 202 (4th Cir. 2007). Because the statements were against the declarant's penal interest, they were properly admitted against all of the defendants. *Id.* at 203; *see also United States v. Smalls*, 605 F.3d 765, 769, 785 (10th Cir. 2010) (stating that declarant's "comments as to how precisely [the victim's] murder occurred," including description of each participant's role in holding down and suffocating victim, were "undoubtedly against [the declarant's] penal interest" and admissible against defendant).

14

The government intends to offer for the truth of the matter asserted statements that undoubtedly qualify as self-inculpatory. In these statements, the defendant-declarants relate specific details regarding the charged crimes, including the identities of the participants and their respective roles, the planning and motives behind the crimes, and the manner in which the crimes occurred. These statements inculpate their declarants by, among other things, revealing the declarants' intimate knowledge of non-public particulars of the crimes and by linking the declarants to the crimes' perpetrators. *See Williamson*, 512 U.S. at 603; *Dargan*, 738 F.3d at 649. No reasonable person would have made such statements had they been untrue, *see Jordan*, 509 F.3d at 202, as "no other statement is so much against interest as a confession of murder," *Donnelly v. United States*, 228 U.S. 243, 278 (1913) (Holmes, J., dissenting). The statements therefore satisfy Rule 804(b)(3)'s requirement that a statement against penal interest be "self-inculpatory."

As noted above, Rule 804(b)(3) also requires that a statement against interest be supported by corroborating circumstances that indicate the statement's trustworthiness. The Fourth Circuit has enumerated several factors relevant to this inquiry:

> (1) whether the declarant had at the time of making the statement pled guilty or was still exposed to prosecution for making the statement, (2) the declarant's motive in making the statement and whether there was a reason for the declarant to lie, (3) whether the declarant repeated the statement and did so consistently, (4) the party or parties to whom the statement was made, (5) the relationship of the declarant with the accused, and (6) the nature and strength of independent evidence relevant to the conduct in question.

*United States v. Kivanc*, 714 F.3d 782, 792 (4th Cir. 2013).

When applied to the statements the government will seek to admit at trial, these factors clearly weigh in favor of finding sufficient corroborating circumstances. First, all of the statements at issue were made at a time that the declarant "remained exposed to the full range of penal consequences attached to his illicit conduct." *Dargan*, 738 F.3d at 650. Second, each of the

15

statements were made to individuals the declarant believed to be trusted members of MS-13. Unlike a confession to law enforcement, in which the declarant has a motive to "shift blame or curry favor," *Jordan*, 509 F.3d at 203, the declarants had no incentive to "manipulate [the] narrative to please the authorities," *Dargan*, 738 F.3d at 650.  Third, the declarants' statements conveyed information regarding premeditated, coordinated acts of violence that the declarants undertook alongside fellow members of MS-13.  The declarants' firsthand knowledge regarding the crimes and the perpetrators lends further support to the statements' accuracy and reliability. Fourth, the government will present extensive evidence at trial corroborating the content of the declarants' statements, including eyewitness and cooperator testimony as well as physical evidence.

Because the self-inculpatory statements that the government intends to offer at trial will be supported by corroborating circumstances, those statements will qualify as statements against penal interest under Rule 804(b)(3), and are admissible against the declarants as well as other defendants implicated by the statements.

## V.      Adoptive Admissions of Criminal Wrongdoing Are Relevant and Not Hearsay.

In a few instances, the government may seek to introduce at trial an out-of-court statement incriminating a defendant that was made to him or in his presence and that he did not deny.  Such statements are admissible as adoptive admissions.

Rule 801(d)(2)(B) excludes from the definition of hearsay a statement offered against an opposing party that "the party manifested that it adopted or believed to be true."  It is not necessary for one to use any specific language to adopt another's statement.  As the Fourth Circuit has explained, "[a] party may manifest adoption of a statement in any number of ways, including through words, conduct, or silence." *United States v. Robinson*, 275 F.3d 371, 383 (4th Cir. 2001).

A defendant's silence when accusatory or incriminating statements are made in his presence may be taken as adoptive admissions. *See, e.g.*, *United States v. Ward*, 377 F.3d 671, 675 (7th Cir. 2004) (holding that defendant's sister's statement, "that's the money they got when they robbed the bank," which was made in defendant's presence, and defendant's silence was properly admitted); *United States v. Higgs*, 353 F.3d 281, 309–10 (4th Cir. 2003) (holding that defendant's silence in response to informant reading him a newspaper article implicating him in the crime constituted adoptive admission).

## TESTIMONIAL STATEMENTS

Andrade and Villatoro made incriminating statements to law enforcement while in custody and after being advised of their *Miranda* rights. At trial, the government will elicit testimony regarding these statements through the law enforcement witnesses who interviewed the declarant-defendant. All these statements are admissible against the defendants who made them pursuant to Rule 801(d)(2)(A), which expressly excludes from the definition of hearsay statements "offered against an opposing party . . . made by the party."

The government will also seek to introduce in evidence statements they made during their post-arrest interviews that will be proven false. For example, Andrade told law enforcement that E.L.T. said something racist to him and his co-conspirators and fired his weapon at them first – claims that will be rebutted by witness testimony and the fact that E.L.T. was shot numerous times in his back. For such statements, the government will not be offering them for the truth of the matter asserted and will argue that these false statements evince a consciousness of guilt. Because the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted," *Crawford*, 541 U.S. 36, 59 n. 9 (2004), *Bruton* does

17

not bar false exculpatory statements, including ones that may indirectly implicate a co-defendant.

*See United States v. Jean-Jacques*, 274 F. App'x 752, 755 (11th Cir. 2008).

## **CONCLUSION**

As set forth above, the government intends to offer at trial out-of-court statements that are

admissible under the Federal Rules of Evidence and are not barred by the Confrontation Clause.


Respectfully submitted,

Jessica D. Aber
United States Attorney


By:      /s/
John C. Blanchard
Maureen C. Cain
Assistant United States Attorneys

Matthew K. Hoff
Department of Justice Trial Attorney
Violent Crime and Racketeering Section

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 6th, 2024, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will send a notification of such filing to all counsel of

record.

                                                                     /s/_____

John C. Blanchard
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3999
Fax:   (703) 299-3980
John.Blanchard@usdoj.gov