IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 1:21cr260-LMB |
| ) | The Hon. Leonie M. Brinkema |
| MELVIN CANALES SALDANA, et al. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT'S MOTION FOR ACQUITTAL OR ALTERNATIVELY
FOR A NEW TRIAL**

COMES NOW, the Defendant, by and through counsel and hereby moves this Honorable Court for a judgment of acquittal pursuant to Fed. R. Crim. P. ("FRCP") 29(c)(1) and (2) and for a conditional determination that in the event the judgment for acquittal does not stand on any appeal, that a new trial should be granted. FRCP 29(d)(1). In the alternative, Mr. Canales moves for a new trial pursuant to FRCP 33(b)(1) and (2). In support of his Motion, Mr. Canales hereby states as follows:

**I.   Striking The Testimony of Abner Molina Rodriguez ("Molina") Because he was Found "Not Credible" by the Court was Highly Prejudicial to Mr. Canales and not the Appropriate Remedy for a *Brady* Violation**

At the time that the Court was considering the remedy to be afforded for a *Brady* violation associated with Molina's confession to a tipster that he and "Hector Naranjo" had committed the double murder, the Court indicated that it was leaning toward declaring a mistrial. Transcript (TR) 1/17/24 at p. 14, ln. 21). Even well after the decision was made to strike Molina's testimony, the court indicated it was "still concerned" that a mistrial was warranted. *Id.* at p. 58, ln. 24. This would have been the better remedy, as upon review of Mr. Molina's

1

testimony and the breadth of the effect of the striking of his testimony and instruction to the jury, Mr. Canales submits that the prejudice caused by the Court's ultimate course was irreparably prejudicial, especially to him.

Defense counsel did not have enough time to consider the issue before them in the midst of this fast-paced and complex trial. An effective assessment of what the appropriate remedy for *each defendant* would have truly required a full review of Mr. Molina's testimony in the context of each defendant's theory of defense and planned closing summation. In an effort to keep with the pace of the trial, however, counsel—who for Mr. Canales was short one counsel due to Mr. Crawley's illness—came to a rather quick and largely unconsidered "decision" to adopt—in addition to Ms. Donovan's Motion for Specific Relief to Enforce Court's Brady Order, filed under seal on January 15, 2023—counsel for Mr. Andrade Rivas 'request that Molina's testimony be stricken. At that time, and counsel for Mr. Canales was doubtful that the Court would grant a mistrial given the stage or proceedings,[1] and so was caught in the position of "bidding against" their own position at a moment in trial when the focus was on the drastic changes that would need to be made to be fully prepared for closing argument in a very short time. Having read through Molina's testimony post-trial, however, had counsel had the opportunity to review it and consider the issue more fully, counsel would have supplemented Mr. Aguilera-Sagastizado's motion for a mistrial and even if it were still denied, would have *objected* to the remedy of striking Molina's testimony as well as to the instruction that it was based on a finding that he was not credible.

i.   *Striking Molina s Testimony in its Entirety and Calling Him Not Credible Removed From the Defense Key Exculpatory Evidence and Prevented the Defense from Challenging Unreliable Uncorroborated Inculpatory Testimony, Without Erasing the Taint of Molina's Testimony*

---

[1] And in fact denied Mr. Aguilera-Sagastizado's motion for a mistrial. *Id.* at p. 16, ln. 7-12.

2

Mr. Molina was a "star" witness for the prosecution. Despite the court's opinion that he was not helpful to the government's case, he was. And to the extent that he was *not*, then striking him is inherently prejudicial to the defense. Mr. Molina testified for nearly an entire day of trial and spoke to all aspects of the charges against the defendants. His testimony included assertions that Mr. Canales was a leader within the Sitios clique (Trial Transcript ("TR") 1/12/24 at p. 7, ln. 9) with whom he, Serio, and Blue checked in by phone before and after the killings of both Tate and Smith for authorization. *Id.* at p. 34, ln. 14; p. 45, ln. 15; p. 59, ln. 9, p. 66, lns. 1-12, p. 69, ln. 18. But Blue did not testify that he had done so, and no phone records offered in evidence bore that out; therefore, this testimony by Molina could be independently challenged by the lack of evidence supporting his assertions that of the multiple calls alleged, no records exist of *any of them*.

Molina also testified that Blue had threatened his son if he did not pay money to the clique for a gun seized during the search of Molina's home. *Id.* at p. 26, ln. 9. This supports the argument made that Blue was a rogue member, prone to random acts of violence outside of gang rules.

Most importantly, however, Mr. Molina testified on both direct and cross-examination that he did not shoot Eric Tate because "he had nothing to do about it" and Tate "was not a rival member." *Id.* at p. 43, ln. 10-13. He confirmed that Mr. Canales did not order him to kill Eric Tate and that the rules of the gang are that you cannot shoot people randomly and indiscriminately. *Id.* at p. 164. Even on redirect, asked whether he had authorization "to go out and look for rivals," and from whom, he stated "yes," and "Demente." *Id.* at 165, ln. 7-11. "Looking for chavalas" is a far cry from random shootings of non-rivals or even unverified suspected rivals, and the only evidence of any "order" to *kill* by Mr. Canales was testimony from

3

Molina and Blue that *four months prior* to the Tate shooting, Mr. Canales brought up at a meeting that El Salvador wanted members to rank up and that to rank up they had to "murder rival members." *Id.* at p. 18, ln. 23. These points were *crucial* for Mr. Canales 'defense—that he would not have and did not conspire to, or aid and abet, the killing of someone outside of the rules of the gang, i.e., a random person such as Mr. Tate. He gave no such order that night. He gave a very different order four months prior. While some of these points were implicated by other evidence and testimony, *none* was so strong as Molina's statements elicited on direct, cross, and redirect examination, regarding the specific topic of what Mr. Canales intended for fellow clique members to do. The Court's instruction that Molina was "not credible" discounted this crucial testimony and removed it from the defense arsenal, along with the challenge to the portions of his testimony that were easily challenged as unsupported by other evidence, as noted above.

      ii.      *The Reason Given for Striking Molina's Testimony Was Not Accurate*

Moreover, Mr. Molina's testimony was in fact not stricken because he was found not credible. There was one point on which the new *Brady* touched, and that was on Molina's explanation for his statement to police and the attendant possibility that he had participated in the double homicide; but this was only a small part of his testimony and was not *about* a defendant on trial. In fact, his testimony was stricken because there was a *Brady* violation, which bears on the fairness to the defense and their ability to prepare for trial—not Molina's credibility. While it is possible a defendant may have moved to exclude Molina prior to his testimony had that *Brady* violation been realized sooner, that strategic decision would have been one for each defense team to make and make carefully, and any disagreement on that point amongst defendants may have then been grounds for severance. In any event, that would have ideally been done *prior* to the

jury hearing from Molina at all, and the subject of the tipster information would have been a subject of cross-examination.

Once Molina testified, however, the complexity and gravity of this decision amplified and required more time and individual consideration of the ramifications by and as to each defendant. Thus, the Court's instruction to the jury was not accurate—Molina was not found to be wholly "not credible," but the jury was told to disregard *everything he* said, including exculpatory testimony, given on direct, cross and redirect, as to Mr. Canales. It also removed from consideration by the jury, and argument by counsel, this exculpatory testimony, effective challenges to his inculpatory testimony, and highlighting areas of conflict with Blue's testimony. Closing argument for Mr. Canales was decimated, as it had been crafted *throughout* trial to include what Molina was expected to say, and ultimately *did say* on the witness stand.

> iii. *Striking Molina's Testimony Based on a Finding he was "Not Credible" Bolstered the Credibility of Other Witnesses, Gravely Prejudicing Mr. Canales*

Instructing the jury that Mr. Molina was wholly excluded because he was deemed "not credible" by the Court, bolstered the testimony and credibility of other witnesses—most especially Blue. The jury could reasonably conclude that had Blue not been credible, he would also have been excluded, as if it is the normal course of trial practice. In addition, where Blue and Molina differed on an important point—a happenstance that could otherwise render *both of their testimony* on that point unreliable—the jury was left only with Blue's version, bolstered not only by the Court's instruction, but by the elimination of conflicting testimony and argument thereon. Couple this with the reality that it would be nearly *impossible* for the jury to *wholly* disregard Molina, the striking of his testimony merely rendered him off limits for closing argument, which was, as noted above, highly prejudicial to Mr. Canales. While the jury's verdict as to Mr. Canales is confusing, at best, the strong indication is that the matter of his "intent" with

5

respect to Mr. Tate resulted in conviction on both the conspiracy and aiding and abetting counts, on which point Molina's testimony was exculpatory.

        iv.       *The Prejudice to Mr. Canales is Evident in the Jury's Irreconcilable Verdict*

Where a mistrial is denied after the introduction of improper evidence, reversal on appeal is required only where there is a "reasonable possibility that the jury's verdict was influenced by the improper material." *United States v. Seeright*, 978 F.2d 842, 849 (4th Cir. 1992). The Court clearly recognized that very possibility when it was inclined, as noted twice on the record, to grant a mistrial. But the larger issue is that *if* the jury was influenced by the excluded testimony, precluding counsel from referencing it only exacerbates the prejudicial effect.

It is no small matter that Mr. Canales was convicted of a murder of which an accused participant was acquitted, ostensibly on self-defense grounds. During pretrial motions, the Court acknowledged that defendants charged with the Tate murder could rise and fall on that defense which was put forth so effectively by Mr. Andrade Rivas 'defense team. To be sure, Mr. Canales did not rely *solely* on that defense (since he was not present), but also on the defense that he could not and would not have conspired to, ordered, aided, abetted, or otherwise supported the murder Eric Tate or any other random individual walking down the street.

Mr. Canales wasn't even present for a shooting that the jury found was not a murder as to a co-defendant who was 1) out following the alleged "order" and 2) who was also convicted of conspiracy to commit murder, but *not of the substantive count*. Mr. Canales was convicted of aiding and abetting a murder that the only other defendant charged in his trial did not commit, and which, under the theory of self-defense, *did not occur*. Mr. Canales submits that there are additional legal grounds for entering judgment of acquittal, but this confusing verdict is *perhaps* explained in part by the striking of Molina's exculpatory testimony. In fact, it is otherwise

inexplicable especially in light of Mr. Canales *acquittal* on the gun charge, despite telling Blue to give the gun to Serio so the members could have it while patrolling.

      v.    *The Ends of Justice Require Acquittal Despite the Lack of Contemporaneous Objection to the Court's Decision to Strike Molina and the Instruction to the Jury*

Mr. Canales Saldana's motions pursuant to FRCP 29 and 33 are timely made, and to the extent they are based on matters for which objections were not fully preserved, the ends of justice still dictate that his conviction on the counts of conspiracy to commit murder and aiding and abetting murder, as well as the special finding as to Count 1 should not stand.

It is unfortunate that the gravity of the decision as to Molina's testimony has become crystallized after the fact, but full review of his testimony was not possible at the time. This is only one reason why *Brady* and FRCP 5(f) require timely disclosure of exculpatory evidence. Form over substance cannot rule the day when a sentence of life without parole is at stake. Surprise, mid-trial, regarding a key witness who has already testified, is untenable and this case illustrates why. Counsel was moving through trial at a very fast pace and was expecting to close on the morning that this issue arose. Counsel did not have time to fully consider the matter let alone research and brief/argue it. Had counsel been able to review Molina's testimony in the context of the question of a proper remedy for the *Brady* violation, counsel would not have consented to his testimony being stricken in its totality and would have objected to the instruction that he was found "not credible." Instead, counsel was given a short time to consider the issue while at the same time looking at her closing and deciding whether and how it could be altered in time to present it that very day without mentioning Molina. The scenario is one in which knowing and informed decisions could not be, and therefore were not, made.

## II. No Reasonable Jury Could Find the Requisite Intent for Conspiracy to Murder Eric Tate or Aiding and Abetting the Murder of Eric Tate.

In addition to the prejudicial effect of the striking of Molina's testimony, and the fact that the jury's verdict credits the Tate murder as to Mr. Andrade Rivas, who was present, as "not murder," Mr. Canales submits that the jury's verdict cannot stand because the requisite intent for conspiracy and aiding and abetting was not proved.

### i. *Conspiracy to Commit Murder in Aid of Racketeering Requires Intent to Kill Victim*

The Fourth Circuit has dealt with the requisite intent for conspiracy to commit murder in aid of racketeering in an unpublished opinion. *United States v. Barnett*, 660 Fed. App'x. 235 (4th Cir. 2016), *unpub.* was a case involving multiple gang-related killings, in which the Fourth Circuit held that where there was no evidence that the defendant intended to *kill* a *particular* victim, then that conviction could not stand. In *Barnett*, the defendant and a co-defendant and fellow gang member spoke on the phone about a potential target allegedly "snitching." The discussion was that the gang's leader had said "if that's true" the victim is "OO." Evidence at trial showed that "OO" meant a "mission," which could be to follow any order (much like patrolling does not mean to "kill"). But, before doing anything, they had to "just get to the bottom of it." The Fourth Circuit held that with no other evidence suggesting that the defendant agreed that the target would be killed, "no rational trier of fact could find, beyond a reasonable doubt, the requisite intent to murder."

In this case, Mr. Canales did not even have Eric Tate in mind when four months prior, the plan to promote clique members was discussed. Nor did he have Eric Tate in mind on the evening of the shooting when he allegedly authorized clique members to go out and "look for chavalas." Eric Tate was not a chavala. Looking for chavalas is not necessarily killing them, and ample evidence came in through Blue and Molina that random people should not be killed and suspected

chavalas must be confirmed. It's simply a *fact* that Mr. Canales did not have the requisite intent that Eric Tate be killed to be guilty of conspiracy to murder him. *Even* if one can conspire to kill a category of person, without specifying an individual, Eric Tate would not and did not fall into the category at issue in this case, i.e., rival gang members. And to be sure, Mr. Canalas *was not there*, so at no time did he see Tate, suspect him of being a rival, or join into any plan whatsoever to kill Tate. Molina, who was there, was sure Tate was not a chavala.

    ii.    *Aiding and Abetting Requires Specific Intent that the Charged Offense Be Committed Prior to or During its Commission*

"Well-established precedent hold[s] that the elements of aiding and abetting a crime are [] synonymous with those of the principal offense." *United States v. Draven*, 77 F.4th 307, 318 (4th Cir. 2023). Murder, be it first or second degree, requires the willful, deliberate, premeditated, and intentional killing of the victim. *See United States v. Jackson*, 32 F.4th 278, 286 (4th Cir. 2022). To sustain a defendant's conviction as an aider and abettor, the government "must establish that the defendant participated in the principal's criminal intent and the unlawfulness of his activity," and "only participation at some stage accompanied by knowledge of the result and intent to bring about *that result*," is required. *United States v. Thomas,* 58 F. App'x 952, 956 (4th Cir. 2003), *unpub.* (quoting *United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996) (en banc), *cert. denied* 519 U.S. 1151, 117 S.Ct. 1087, 137 LN.Ed.2d 221 (1997)) (emphasis added). While the precise identity of a victim need not be known to an aider or abettor for there to be "intent to kill," there must be an intent to kill *the victim*. For example, in *United States v. Simmons* an order was given by the defendant to fellow gang members to kill a rival and any of his associates who didn't abandon the intended victim. Two men refused to abandon the intended target and were killed. The defendant intended that specific result: that those victims would be killed because they met the conditions set forth in the order. *United States v. Simmons*, 11 F.4th 239, 271 (4th Cir.

9

2021). In the case at bar, Mr. Canales—even taking the evidence in the light most favorable to the United States—suggested that the lower ranking members needed to rank up by targeting and killing chavalas; an order to that effect was ultimately given by Astuto, who held the first word. Eric Tate did not qualify, and as Molina testified, "he had nothing to do with anything," and Mr. Canales did not and would not have ordered his killing.

There was no evidence of Mr. Canales ordering Eric Tate to be killed, or in fact anyone on the evening of Tate's death. The clique members were going out to patrol, and as he said to Blue, he should lend them his gun because it would be on him "if anything happened to them." But with regard to actual killing, Mr. Canales told Blue in July 2019 (months after the alleged "order to kill") that, "You're not going to go out on a limb . . . It has to be planned right. Get me the letters so we can see what is going on there," Govt. Ex. 23-18A. Blue's testimony also confirmed there was a process by which suspected chavalas were investigated and their names put on a list of targets. *See, e.g.,* TR 1/10/24 at pp. 9-10, 105-106.  Confirmation was required, which was why hence his concern that the second victim of the double murder would not "count." *Id.* at p. 10.

The acquittal of Mr. Andrade Rivas as well cannot be reconciled with the idea that the jury found that Eric Tate was killed in accordance with gang rules or orders, or any order given by Mr. Canales. Regardless, where the jury's verdict is supportable on one ground, but not another, and it is impossible to determine on what grounds the jury relied, the verdict should be set aside. *Yates v. United States*, 354 U.S. 298, 311–12, 77 S. Ct. 1064, 1073, 1 LN. Ed. 2d 1356 (1957), overruled on other grounds by *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 LN. Ed. 2d 1 (1978) (in Smith Act prosecution, in order to convict, the jury was required to find an overt act which was 'knowingly done in furtherance of an object or purpose of the conspiracy

10

charged in the indictment; 'the court said "we have no way of knowing whether the overt act found by the jury was one which it believed to be in furtherance of the 'advocacy 'rather than the 'organizing 'objective of the alleged conspiracy").

    *iii.    Aiding and Abetting Requires Commission of the Substantive Offense*

This jury made no finding that the substantive offense of the murder of Eric Tate was committed by anyone. In fact, the acquittal of Mr. Andrade Rivas who was actually present when Tate was killed suggests that the defense of self-defense was accepted by the jury, which would mean that Eric Tate was not "murdered" under the law. In the context of this case, therefore, Mr. Canales 'conviction of aiding and abetting murder cannot stand. The jury instruction and law are clear:

> Before a defendant may be found guilty as an aider or an abettor to a crime, the government must also prove, beyond a reasonable doubt, that some person or persons committed each of the essential elements of the crime charged as detailed for you in these instructions.

The jury was not asked to and did not make a finding that "some person or persons" committed the murder of Eric Tate and in fact acquitted the only co-defendant accused of that murder. The Court should *not* presume, in light of the self-defense claim which resulted in the acquittal of Mr. Andrade Rivas, that the jury found that "some person or persons committed each or any of the essential elements of the murder of Eric Tate" without a specific finding.

    **III.**    **The Court Should Strike from the Verdict the Special Finding of Drug Quantities, as the Same Justification for Doing So in the Second Trial was Present in the First Trial**

In the second trial, the court struck the special findings of quantities on the drug conspiracy counts, pointing out that the evidence suggested multiple conspiracies and the government did not cover the quantities in its closing. The quantities were discussed during the defendants' Rule 29 arguments.

11

The very same scenario holds true for the first trial, in which 1) it was confirmed by Agent Brown that Blue told the cooperating source that he/she could buy drugs from him (Blue) or he could buy drugs from Mr. Canales, but that he and Mr. Canales did not work together and that the cooperating source believed Blue was selling for his own purposes; 2) the drug quantities were discussed during Rule 29 arguments; but 3) the government did not cover drug quantities in its closing. Although the trials were severed, the six defendants are all charged in one case and the striking by the Court of essentially an indicted count should be applied to all defendants where the justification exists identically as to all defendants.

For this reason, Mr. Canales respectfully prays that the Court render judgment of acquittal as to the special finding of drug quantity on Count 2.

**IV.    The Court Should Grant a New Trial Based on the Newly Discovered Evidence That Tecolote Confessed to a Tipster That he Committed the Double Murder with Hector Naranjo and that Hector Naranjo is Blue.**

The *Brady* violation with respect to the tipster has multiple layers of prejudice. First, as described above, it led to the striking of Molina's testimony which was not an appropriate remedy. Second, the even-later discovered revelation that "Hector Naranjo" is in fact Blue, warrants a new trial. The defense was not able to cross-examine Blue, Molina, or law enforcement about this information or include it in their defense in any fashion. A full and timely disclosure of the information—*including that Hector Naranjo and Blue are one and the same*—was mandated by *Brady,* FRCP 5(f) and this Court's Order (Dkt. 109). The appropriate remedy at this stage is dismissal or alternatively, a new trial.

**V.    The Jury's Verdict is Not Only Inconsistent, but Irreconcilable and Unsupported by Sufficient Evidence.**

The court must grant a new trial when the jury renders an irreconcilable inconsistent verdict. *See Ladnier v. Murray*, 769 F.2d 195, 199 (4th Cir. 1985).

Much of the argument related to the jury's verdict being unsupported by the evidence has been touched upon above, but it bears repeating that there is no rational theory by which Mr. Canales can a) be guilty of a aiding and abetting a murder he did not intend would occur, b) be guilty of aiding and abetting a murder the jury clearly found did not qualify as murder at all, and c) have been acquitted of the firearms charge (Count 11). Mr. Canales only involvement with fellow clique members the entire day of Eric Tate's death was telling them to be sure to have a gun when they go out; the only other elements to Count 11 is the murder of Eric Tate—which the jury did *not* find with respect to the gun charge.

### VI. The Totality of the Circumstances Related to the Prejudice Caused by the *Brady* Violation, the Resulting Striking of Molina, the Insufficiency of the Evidence, and the Irreconcilable Inconsistent Verdict, Warrants Acquittal or Alternatively, A New Trial

Any one of the above grounds are sufficient to grant Mr. Canales 'requested relief, but taken collectively, bring the integrity of the verdict into serious question. The stakes in any case are too high for failures of justice, but where life without parole is at stake, none of the issues presented herein standing alone, and even more so collectively, are harmless.

WHEREFORE, based on the foregoing Mr. Canales respectfully prays that the Court enter a judgement of acquittal as to Counts 9 and 10, and as to the special findings related to Counts 1 and 2 and make a conditional finding that if the acquittals are reversed an appeal, a new trial should be granted.  Alternatively, Mr. Canales seeks a new trial.

                                              Respectfully Submitted.

                                              MELVIN CANALES-SALDANA
                                              By Counsel

THE LAW OFFICE OF LANA MANITTA, PLLC

By:         /s/                                            .
Lana Manitta, VSB #42994
140B Purcellville Gateway Drive, #511
Purcellville, VA 20132
(703) 705-4428
FAX (703) 705-4429
Lmanitta@ManittaLaw.com
Counsel for Melvin Canales Saldana


LAW OFFICE OF DWIGHT CRAWLEY

By:         /s/                        .
Dwight Crawley
1300 I St., N.W.
Suite 400
Washington, D.C. 20005
(703) 786-4004
FAX (202) 722-0246
Vadclawyer@gmailn.com
Counsel for Melvin Canales Saldana


## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I HEREBY CERTIFY that I filed the foregoing on this the 1st day of February, 2024 with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing (NEF) to all counsel of record.

THE LAW OFFICE OF LANA MANITTA, PLLC

By:         /s/                                            .
Lana Manitta, VSB #42994
140B Purcellville Gateway Drive, #511
Purcellville, VA 20132
(703) 705-4428
FAX (703) 705-4429
Lmanitta@ManittaLaw.com
Counsel for Melvin Canales Saldana

14