IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 1:21cr260-LMB |
| | ) The Hon. Leonie M. Brinkema |
| MELVIN CANALES SALDANA, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANT'S POSITION ON SENTENCING

COMES NOW, the Defendant, Melvin Canales Saldana ("Mr. Canales"), by and through counsel, and pursuant to Rule 32 of the *Federal Rules of Criminal Procedure*, section 6A1.3 of the advisory *United States Sentencing Guidelines* ("the Guidelines"), and this Court's Policy Regarding Procedures to be Followed in Guideline Sentencing, hereby states that he has received and reviewed the Presentence Investigation Report ("PSR") and has no objections to the guideline calculation or the recitation of information provided the Probation Office by various authorities. Mr. Canales does, however, maintain his innocence as to the charges on which he has been convicted, as well as any alleged unadjudicated conduct. He also objects on constitutional grounds to the mandatory sentence prescribed by law, as it violates his right guaranteed by the 8th Amendment to the United States Constitution to be free from cruel and unusual punishment.

## THE LAW OF SENTENCING

Were Mr. Canales not facing a statutory mandatory life sentence, the Court would begin the process of sentencing him by determining the advisory sentencing range pursuant to the Guidelines. *See, e.g., Kimbrough v. United States*, 552 U.S. 85 (2007), and *Gall v. United States*,

1

552 U.S. 38 (2007). The Guidelines, which certainly offer defendants no leniency, would not be presumed to be reasonable. *See Nelson v. United States*, 129 S. Ct. 890 (2009), 2009 WL 160585 (Jan. 26, 2009); *Spears v. United States*, 129 S. Ct. 840 (2009), 2009 WL 129044 (Jan. 21, 2009). And in fact, often, and in ever-increasing numbers, courts nationwide and within our Circuit determine the Guideline range to be "greater than necessary." 18 U.S.C. 3553(a) ("3553(a)"). *See* 2023 Sourcebook of Federal Sentencing Statistics.

Were Mr. Canales not facing a mandatory life sentence, the Court would determine the appropriate sentence by considering not only the offenses of conviction, but all of the case and defendant-specific factors, including mitigation, which are mandated to be considered by 18 U.S.C. § 3553(a). Were a different sentence available, a term of years rather than life without the possibility of release would absolutely be appropriate, even in light of the severity of the offenses of conviction, based on a number of factors to be explored further below.

## THE ADVISORY GUIDELINE RANGE

I.  *The Guideline Range is Properly Calculated and the Mandatory Minimum Sentence as Dictated by Statute is Accurately Stated*

As previously noted, Mr. Canales has no objection to the advisory range as calculated by Probation nor the statement as to the mandatory minimum sentences as set forth in the relevant statutes. His sole objection as it relates to the sentence prescribed is to the mandate of a cruel and unusual punishment.

## **3553(a) CONSIDERATIONS**

    I.    *The nature and circumstances of the offense*

Mr. Canales stands convicted, with respect to the most serious of charges, of conspiring to commit and aiding and abetting the murder, in aid of racketeering, of a man he did not know, had never seen nor heard of, and with whom he had no dispute. Eric Tate was not a member of a rival gang and Mr. Canales never ordered any member of his clique to kill Eric Tate. Based on what we know from the trial record of this case, which contains *two separate trials* involving the shooting, Eric Tate was killed for one of two reasons: either he fired first—be it some or all of the seven bullets expelled from his gun—and was shot in self-defense *or* members of Mr. Canales' clique made a decision *in the moment* to shoot someone who did not fit the profile of "chavala," who had not been investigated, verified, or "green lit," and for whom no order or approval to kill had been given by Mr. Canales or indeed, anyone. The report given Mr. Canales after the shooting misrepresented the entire interaction, as it was designed to garner "credit" for those who were present despite violating clique and gang rules. The promotions received by clique members afterward were outside of Mr. Canales' control, did not represent his personal approval of the killing, and could not constitute aiding and abetting as they occurred after the fact.

What is also important to note is that the members of the clique operated within a gang that simply does not accept any dissent or misstep from its members. Although Mr. Canales repeatedly warned clique members to "do things right," and didn't go out "patrolling" himself, he nonetheless answered to at least one superior within his clique and to the gang leaders in El Salvador, where his family, including two young daughters still live. Those leaders, pulling strings from within prison walls and small towns where they wield significant control, do not

3

want to hear that things aren't going well, or a shooting wasn't done right. As it was, Mr. Canales was, at the time of the Tate shooting, already rubbing his fellow clique members the wrong way, which can be fatal in MS-13.

II. *The history and characteristics of the Defendant*

Like so many young men who find themselves recruited as a child into MS-13, Mr. Canales was without means, without significant education and without a father. When older members purport to take the place in an adolescent boy's life of the missing paternal figure, and at the same time provide protection to a vulnerable family such as Mr. Canales,' who were otherwise subject to extortion by the gang, there is little choice. He thought he had escaped when he came to the United States, but he was found by clique members and ultimately told he would be helping the clique—after being given a beating as punishment—as a "second word."

While Mr. Canales was an active member of the gang, he did abide by its dysfunctional "code of conduct," which demanded that only confirmed rivals (who by definition, pose a threat) be targeted. He did not support random attacks, and disputed the promotion of those who, for example, participated in the double murder which included an "innocent" who was merely a friend of a confirmed 18th St. member. And for his participation in a gang that promotes and commits violence, by any "code of conduct," he will be facing an entire life behind bars.

III. *The Kind of Sentences Available and Sentencing Objectives*

    a. <u>The sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from defendant.</u>

There is only one sentence more severe than life in prison without the possibility of

4

parole. Arguably, there is none more difficult to serve. Not only because it is *forever*, which in Mr. Canales' case could be 50+ years, but because it is not served easily. Mr. Canales will spend his life in a high to maximum security federal prison, populated by those with similar offenses and similar sentences. For this reason, the sentence most certainly reflects the seriousness of the offenses of conviction.

But it doesn't accomplish much else. It is difficult to see how a sentence that offers no real chance at rehabilitation—in that it offers an offender who wants to turn his life around *no chance* to return to society and prove himself worthy of even one more day spent outside of prison walls—promotes respect for the law. Likewise, the harshest of sentences—reserved for the most serious of crimes—provides no deterrence. For those who would be deterred, the idea of one year, perhaps even one month or one *day* in prison is enough. If the possibility of going to prison deters, it's the possibility alone that does the trick. An entire lifetime need not be at stake for individuals who would be deterred by the thought of punishment.

If the objectives of respect for the law and deterrence are not being achieved, and the defendant has no chance to call on his experience to serve society in the future and prevent others from following the same path, then the lack of individualized sentencing is even more troubling from a constitutional *and* policy standpoint, because the *only* objective being met is retribution. What positive effect might, for example, a 30-year sentence have if Mr. Canales could a) serve his time with some hope for the future and b) one day return to El Salvador to pass on his story to others who might be recruited by MS or another gang?

    b. <u>The sentence should take into account the defendant's need for treatment, vocational or educational training.</u>

Mr. Canales could and would undoubtedly benefit from counseling, educational, and vocational programs in prison.

## **CONCLUSION**

The law dictates that this Court has no discretion but to impose a sentence of life without parole to the most serious offense of conviction, Count X. Otherwise, the Court would fashion an individualized sentence—taking *all* factors into account—that is "no greater than necessary" to achieve *all* of the enumerated objectives of sentencing and would, Mr. Canales submits, find a term of years to be appropriate. Denial of that consideration, including of mitigating circumstances, runs afoul of the Eighth Amendment to the United States Constitution. Nevertheless, without waiving his claim of innocence as to the charges of conviction, his argument that the sentence is unreasonable and unconstitutional, and preserving all grounds for appeal and other post-conviction relief as applicable, Mr. Canales submits that the Court should impose no more than twenty years on Count I, no more than five years on each of Counts II and IX, and one year and one day on each of Counts XVI and XVII, and that all sentences should run concurrently to one another including Count X, with credit for time served as to each Count.

                                                                      Respectfully Submitted.

                                                                      MELVIN CANALES-SALDANA
                                                                      By Counsel

THE LAW OFFICE OF LANA MANITTA, PLLC

By:_____/s/_____.
Lana Manitta, VSB #42994
1800 Diagonal Road, Suite 600
PMB# 1152
Alexandria, VA 22314
(703) 705-4428
FAX (703) 705-4429
Lmanitta@ManittaLaw.com
Counsel for Melvin Canales Saldana

**CERTIFICATE OF ELECTRONIC FILING AND SERVICE**

I HEREBY CERTIFY that I filed the foregoing on this the 23rd day of April 2024 with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing (NEF) to all counsel of record.

THE LAW OFFICE OF LANA MANITTA, PLLC

By: _____/s/_____.
Lana Manitta, VSB #42994
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
(703) 705-4428
FAX (703) 705-4429
Lmanitta@ManittaLaw.com
Counsel for Melvin Canales Saldana