UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 1:21-CR-260-1 (LMB) |
| v. | : | |
| | : | Sentencing Date: April 30, 2024 |
| JAIRO AGUILERA-SAGASTIZADO | : | |

### DEFENDANT'S POSITION ON SENTENCING

Mr. Aguilera's involvement with MS-13 began when he was recruited into the gang in El Salvador as a child. He unfortunately had a veritable checklist of risk factors making him vulnerable to gang recruitment. He grew up in rural poverty, his father abandoned the family when Mr. Aguilera was an infant, and his mother left for the United States when he was two years old to earn money for her children, leaving Mr. Aguilera to be raised by his grandfather. His grandfather, by all accounts a man of good character, died when Mr. Aguilera was 11 or 12 years old and Mr. Aguilera was passed on to other relatives. MS-13 was active in his community, he was recruited into it, and it is well known that once recruited into MS-13, desertion can result in severe consequences to include death.[1] When he came to the United States in 2017, the clique that was established in his San Miguel community was present here.

Notwithstanding his participation in MS-13, Mr. Aguilera has many good qualities and there is nothing innate in his character to suggest that he simply chose to be a gang member.

---

[1] *Id.* at 32, ¶ 161. As stated in a report by Insight Crime as to MS-13: "There are two transgressions that lead to an automatic death penalty: snitching and desertion." S. Dudley, H. Silva Ávalos, <u>MS-13 in the Americas, How How the World's Most Notorious Gang Defies Logic, Resists Destruction</u>, Insight Crime, Center for Latin American and Latino Studies, American University, Washington DC (2018) at 47. The report can be found at https://www.insightcrime.org/wp-content/uploads/2018/02/MS13-in-the-Americas-InSight-Crime-English.pdf.

Family and friends that know Mr. Aguilera, as expressed in the attached letters of support, recognize that he is a hard worker,[2] a good co-worker,[3] an excellent father, and generous to others.[4] His sister writes how at the end of a day delivering food, they would buy hamburgers and drive around to provide them to the homeless.[5] Mr. Aguilera is much more than simply a member of MS-13 and if ever given the opportunity, he is capable of separating himself from the lifestyle that has brought him before the court.

It should also be considered in imposing a mandatory life sentence on Mr. Aguilera, he had just turned 24 years old at the time of the homicide in this case and he was a juvenile when indoctrinated into the gang. It is well recognized that youthful adult offenders, at least up to the age of 25, are more akin to adolescents than adults and more prone to engage in impulsive and riskier behaviors than more mature counterparts.[6] Youthful offenders are likewise more prone to peer pressure and to engage in peer-based offending.[7] It is recognized, however, that the Court is required to impose a life sentence on Count 13 of the Indictment[8] even though the Defendant

---

[2] His mother reported to counsel that Mr. Aguilera regularly worked 10 to 12 hour days at restaurants, cleaning boats, or driving a taxi while living with her in New York.

[3] See letter of Alfredo Cerrato, Exhibit 5.

[4] See letters of Jennifer Reyes, Exhibit 2, and Diana Rosales, Exhibit 4.

[5] See letter of Jennifer Reyes, Exhibit 2.

[6] Laurence Steinberg, A Social Neuroscience Perspective on Adolescent Risk-Taking, Dev. Rev. Vol. 28 (1) 78-106, 1-2 (2008) (noting that "rates of risk-taking are high among 18 to 21-year olds" and explaining further that adolescents and young adults are more likely than adults over age 25 to engage in such risky behaviors).

[7] Albert, D., et al. (2013). The teenage brain: Peer influences on adolescent decision making. Current Directions in Psychological Science, 22, 114–120 available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4276317/.

[8] Murder in Aid of Racketeering in violation of 18 U.S.C. §§ 1959(a)(1) and (2).

respectfully asserts that a mandatory life sentence violates the Eight Amendment based on his youth. He recognizes, in making an Eighth Amendment claim at sentencing, that no federal court has found that imposing a statutory mandatory life sentence on an offender over the age of 18 years old violates the Eighth Amendment as cruel and unusual. *See e.g. United States v. Sierra*, 933 F.3d 95, 97 (2d Cir. 2019)(stating "'a line must be drawn,' and the Supreme Court has repeatedly chosen in the Eighth Amendment context to draw that line at the age of 18, which 'is the point where society draws the line for many purposes between childhood and adulthood.'").

In regard to the sentencing guidelines, Mr. Aguilera agrees that his total offense level is 43, he has a criminal history score of zero, resulting in a guidelines' recommendation of life in prison.[9] His conviction for Count 13 of the Indictment, Murder in Aid of Racketeering in violation of 18 U.S.C. §§ 1959(a)(1) and (2), requires the Court to sentence him to statutory life in prison without the possibility of parole.

With regard to the other counts,[10] the guidelines are advisory and the court in imposing sentence must make "an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). The guidelines range is but one of several factors a court considers when imposing a sentence and it is error to treat those ranges as default sentences. *See United States v. Mendoza-Mendoza*, 597 F.3d 212, 216-17 (4th Cir. 2010); *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam); *Spears v. United States*, 555 U.S. 261, 263-64

---

[9] *See* PSR at 17, ¶ 119 & 21, ¶ 145.

[10] Counts 1, 2, 12, and 14.

3

(2009). A court must also weigh the factors enumerated in 18 U.S.C. § 3553(a) when imposing a sentence.[11]

Taking all these factors into account, not withstanding that the Court must impose a life sentence on Count 13, it is respectfully suggested that Mr. Aguilera be sentenced to concurrent terms of imprisonment on the other counts in the indictment to the life sentence the Court must impose on Count 13.

### I. Mr. Aguilera's History and Characteristics

Mr. Aguilera largely grew up in rural poverty in the Colonia de Naranjo in the Department of San Miguel, El Salvador.[12] Born in 1995, he barely knows his father and his mother, who was born in 1980 and was then a teenager,[13] immigrated to the United States when he was only 2 years old.[14] Mr. Aguilera was left in the care of his grandfather, Rafael Sagastizado, a carpenter, who watched after Mr. Aguilera.[15] Mr. Aguilera was close to his

---

[11] The factors for the district court to consider include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the kinds of sentences available, (3) the guidelines range, (4) the need to avoid unwarranted sentencing disparities, (5) the need for restitution, and (6) the need for the sentence to reflect: the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to the defendant and others, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a). The Court must weigh each of these factors when determining the appropriate sentence. *Rita v. United States*, 551 U.S. 338, 351 (2007) (citation omitted).

[12] PSR at ¶ 130 and communication of Reina Reyes (Defendant's mother) to counsel.

[13] Communication of Reina Reyes to counsel who reported she was born in 1980.

[14] PSR at ¶ 131.

[15] PSR at ¶ 131 and communication of Reina Reyes to counsel.



Rafael Sagastizado and Jairo
~2003

grandfather who was the only constant parental figure in his formative years.[16] And while Mr. Sagastizado was poor and his home did not have electricity until Mr. Aguilera's mother helped buy a new home for them in about 2006, Mr. Sagastizado ensured that Mr. Aguilera was able to attend school.[17]

Mr. Sagastizado died in 2007.[18] After his grandfather's death, Mr. Aguilera, who was 11 or 12 years old, was passed to the care of his uncle and he started working in addition to attending school.[19] A friend and neighbor from El Salvador recalls how Mr. Aguilera was assiduous in caring for the family's cattle and if one wandered off "he did not rest until he found it."[20] His sister, Jennifer Reyes, who was born in the United States, recalls visiting Mr. Aguilera in El Salvador when she was a child. She remembers him getting up early in the morning to care for the family's animals.[21]

Mr. Aguilera would also work in agriculture, as a bricklayer, and when old enough, he became a taxi driver. The friend referenced above recalls that he "was characterized by his

---

[16] Communication of Reina Reyes to counsel.

[17] PSR at ¶ 131.

[18] Id.

[19] PSR at ¶ 131.

[20] Letter of Rosa Emma Pineda de Argueta, Exhibit 1.

[21] Letter of Jennifer Reyes, Exhibit 2.

humility and honesty. On many occasions, as a taxi driver, he provided free services to neighbors who needed transportation to a hospital and did not have a car."[22]



Jairo and Elizabeth Lopez when she was pregnant with Dereck

At the age of 16 or 17, Mr. Aguilera began a relationship with Elizabeth Lopez with whom he has one son, Dereck, now age 10.[23] After Dereck's birth, Mr. Aguilera immigrated to the United States and joined family living on Long Island, New York. He obtained jobs at restaurants and would help provide financial support to Elizabeth and Derek so they could come to the United States.

While working in New York, Mr. Aguilera met Diana Rosales and they began a long term relationship. Ms. Rosales remarks that Mr. Aguilera was washing dishes at a restaurant that she frequented and they "got to know each other and I fell in love with his good heart because he likes to help people a lot." She and others know Mr. Aguilera as respectful, humble, funny, and caring towards his children—someone who works hard to provide his children with the things that he did not have as a child. It is also evident from Ms. Rosales' letter that Mr. Aguilera and Ms. Rosales have aspirations to make their children proud of them indicating that Mr. Aguilera sees a future outside of the gang.[24]

Ms. Rosales and Mr. Aguilera have one child together, Mateo, and both have children by

---

[22] Id.

[23] PSR at ¶ 131.

[24] Letter of Diana Rosales, Exhibit 4.

other partners, but Mr. Aguilera treated her other children as his own.[25] Mr. Aguilera's sister, Jennifer Reyes also states that Mr. Aguilera adores his children and that her brother is funny and humble. Ms. Reyes and Ms. Rosales both comment on how Mr. Aguilera, despite his mother leaving for the United States, understands that she did so to help her family (she was eventually able to buy a house for her family in El Salvador) and how he has been supportive of his mother.[26]

Regarding his work ethic, Mr. Aguilera began working at a young age caring for his family's livestock. He has worked as a bricklayer, a taxi driver, and after coming to the United



Jairo and his sons, Dereck and Mateo

Jairo and his family at the beach.

---

[25] Id.

[26] Letter of Jennifer Reyes, Exhibit 2.

States, in restaurants, cleaning boats, and as a driver.[27] His family speaks highly of his work ethic and his mother reports that Mr. Aguilera worked 10 to 12 hours a day and on his off days liked to take his family to the beach.[28]

It is a reality that many people that are MS-13 involved are not solely identified by their gang affiliation, but have a greater life outside of the mandates of the gang like Mr. Aguilera. Unfortunately, Mr. Aguilera's gang-involvement has led to him being convicted of serious crimes for which he will receive a mandatory life in prison.

It was not inevitable that Mr. Aguilera would be involved in MS-13. If he grew up in other circumstances, there is real reason to believe he would be a hard working person committed to raising his children. Unfortunately, it is well known that San Miguel, El Salvador is rife with gang activity and a lack parental care is cited as a particular risk factor making a young person vulnerable to gang influence.[29]

The lack of parental supervision over Mr. Aguilera when he was a child is obvious where

---

[27] Letter of Rosa Emma Pineda de Argueta, Exhibit 1 and communication of Reina Reyes to counsel.

[28] Communication of Reina Reyes to counsel.

[29] Phelan A. Wyrick and James C. Howell, *Strategic Risk-Based Response To Youth Gangs*, JUVENILE JUSTICE JOURNAL, VOL. IX, NO. 1, p. 24 (September 2004) ("Key family risk factors for gang membership include the family structure (*e.g.* broken home), family poverty, . .[ and p]oor family management, including poor parental supervision (monitoring) and control of children, has been shown to be a strong predictor of gang membership") (citation omitted). available at www.ncjrs.gov/html/ojjdp/203555/jj3.html   *See also* OJJDP MODEL PROGRAMS GUIDE: *Gang Prevention* available at www.ojjdp.gov/mpg/progTypesGangPrevention ("social, economic and cultural forces push many young people into gangs") *See also*, Phelan A. Wyrick and James C. Howell, *Strategic Risk-Based Response To Youth Gangs*, JUVENILE JUSTICE JOURNAL, VOL. IX, NO. 1, p. 22 (September 2004) (" . . . [T]he accumulation of risk factors greatly increases the likelihood of gang involvement . . .[and] . . .the presence of risk factors in multiple domains appears to increase the likelihood of gang involvement even more than the general accumulation of risk factors."),  available at www.ncjrs.gov/html/ojjdp/203555/jj3.html

he was passed to different relatives in the absence of his parents, which when combined with other risk factors, no doubt contributed to his recruitment, if not conscription, into MS-13.[30] Mr. Aguilera was a still developing teenager when fully indoctrinated into the gang.[31] And after becoming a member of the gang, he understood this membership was permanent, which came with him to the United States.[32] The alleged offending followed.

**II. Offense Conduct**

Mr. Aguilera pled not guilty to the indictment, the Court heard the evidence, and the jury returned guilty verdicts on all counts. While he can never undo the tragedy resulting from the crimes of which he was convicted, consistent with the evidence, he was not the leader and others more culpable instructed lower ranking members like Mr. Aguilera to commit the indicted offenses. He had also just turned 24 at the time of the murder at issue in his case and was a

---

[30] *See* e.g. https://www.nationalgangcenter.gov/SPT/Risk-Factors/FAQ.

[31] The attraction and risk factors for gang membership for Mr. Aguilera coincide with well-established lack of impulse control that is exhibited by the teenaged brain. In a series of cases, the U.S. Supreme Court has recognized that certain brain capacities relevant to criminal responsibility are still developing in the teenage brain such that the youthful offender should not be subject to the harsh penalties of an adult offender even when they commit the most serious of crimes such that youthful offenders are not as blame worthy as their mature counterparts. *Miller v. Alabama*, 567 U.S. 460 (2012), *Graham v. Florida*, 560 U.S. 48, 67-69 (20120), *Roper v. Simmons*, 543 U.S. 551, 571 (2005). "[A]s any parent knows and as the scientific and sociological studies . . . tend to confirm, a lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions." *Roper v. Simmons*, at 570.

[32] "There are two transgressions that lead to an automatic death penalty: snitching and desertion." S. Dudley, H. Silva Ávalos, MS-13 in the Americas, How How the World's Most Notorious Gang Defies Logic, Resists Destruction, Insight Crime, Center for Latin American and Latino Studies, American University, Washington DC (2018) at 47. The report can be found at https://www.insightcrime.org/wp-content/uploads/2018/02/MS13-in-the-Americas-InSight-Crime-English.pdf.

juvenile when recruited by MS-13. His youth should be viewed as a mitigating factor.

### III. Conclusion

Despite his MS-13 involvement, which resulted from his recruitment as a child in El Salvador, Mr. Aguilera is far more complex than simply being a gang member. Coming from rural poverty, he has demonstrated a tremendous work ethic his entire life, has been dedicated to his family and children, and he is generous on a personal level. A life sentence on Count 13 and sentences on the remaining counts to run concurrent with a life sentence reflect the seriousness of his offenses and address the factors set forth in 18 U.S.C. §3553(a).

Respectfully submitted,
JAIRO AGUILERA
By Counsel

_____/s/_____
Joseph King
VSB # 65632
King, Campbell, Poretz & Mitchell, PLLC
118 N. Alfred Street
Alexandria, VA 22314
Tel.: (703) 399-0010
Fax: (703) 652-6010
jking@kingcampbell.com

## **CERTIFICATE OF SERVICE**

      I certify that the foregoing pleading has been electronically filed with the Clerk by CM/ECF system, which will send notification of such filing to all counsel on this 25th day of April, 2024.

                                        _____s/_____
                                        Joseph King