```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                         ALEXANDRIA DIVISION

    ---------------------------x
    UNITED STATES OF AMERICA   :   Criminal Action No.:
                               :   1:21-cr-260
         versus                :
                               :   Tuesday, June 18, 2024
    CARLOS JOSE TURCIOS        :   Alexandria, Virginia
    VILLATORO,                 :
              Defendant.       :   Pages 1-18
    ---------------------------x

         The above-entitled sentencing was heard before the
    Honorable Leonie M. Brinkema, United States District Judge.
    This proceeding commenced at 10:33 a.m.

                         A P P E A R A N C E S:

    FOR THE GOVERNMENT:    JOHN BLANCHARD, ESQUIRE
                           OFFICE OF THE UNITED STATES ATTORNEY
                           2100 Jamieson Avenue
                           Alexandria, Virginia  22314
                           (703) 299-3700

                           MATTHEW HOFF, ESQUIRE
                           DEPARTMENT OF JUSTICE
                           ORGANIZED CRIME AND GANG SECTION
                           1301 New York Avenue, NW
                           Suite 700
                           Washington, D.C.  20005
                           (202) 598-8093

    FOR THE DEFENDANT:     ELIZABETH VAN PELT, ESQUIRE
                           LIBBEY VAN PELT LAW, PLLC
                           3033 Wilson Boulevard
                           Suite 700
                           Arlington, Virginia  22201
                           (571) 356-9066

    COURT REPORTER:        STEPHANIE M. AUSTIN, RPR, CRR
                           Official Court Reporter
                           United States District Court
                           401 Courthouse Square
                           Alexandria, Virginia  22314
                           (607) 743-1894
                           S.AustinReporting@gmail.com

         COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

1

```
1                    P R O C E E D I N G S
2           THE DEPUTY CLERK:  Criminal Number 1:21-cr-260,
3    United States of America versus Carlos Jose Turcios
4    Villatoro.
5           Will counsel please note their appearances for the
6    record, first for the government.
7           MR. BLANCHARD:  Good morning, Your Honor.  John
8    Blanchard and Matt Hoff on behalf of the United States.
9           MR. HOFF:  Good morning, Your Honor.
10          THE COURT:  Good morning.
11          MS. VAN PELT:  Good morning, Your Honor.
12   Libbey Van Pelt, and I'm here for Carlos Jose Turcios
13   Villatoro.
14          THE COURT:  Very good.  And we have an
15   interpreter.  We'll have her affirmed.
16               (Interpreter sworn in open court.)
17          THE INTERPRETER:  Good morning, Your Honor.
18   Cynthia Lopez Roman, federally-certified court interpreter.
19          THE COURT:  Good morning.
20          All right.  Ms. Van Pelt, have you had enough time
21   to go over the presentence report yourself and with your
22   client?
23          MS. VAN PELT:  Yes, Your Honor.  I just need one
24   minute to secure his signature on the restitution order.
25          THE COURT:  Fine.
```

```
                                                                    3
 1                         (Pause.)
 2             MS. VAN PELT:  Your Honor, we're prepared to
 3   proceed, and I have gone over all provisions of the
 4   presentence investigation report with Mr. Turcios.
 5             THE COURT:  All right.  Ms. Van Pelt, do you have
 6   any objections, additions or deletions or corrections you
 7   want made to the report itself?
 8             MS. VAN PELT:  Yes, Your Honor.  And this one is a
 9   new one that I just recognized and discussed with the
10   government.  But the report -- the report notes that
11   Count 2, the drug conspiracy, has a mandatory minimum of
12   five years and a maximum of 40 years.  That is inaccurate,
13   because, as the Court recalls, the question of the drug
14   weights didn't go to the jury, and so instead of the
15   statutory provisions for Count 2 being a mandatory minimum
16   of five years and a maximum of 40 years, there should be a
17   maximum of 20 years, and the Court could -- there's no
18   mandatory minimum sentence.
19             THE COURT:  Mr. Blanchard, do you agree with that?
20             MR. BLANCHARD:  I do, Your Honor.  We're looking
21   at page 25 under statutory provisions.  Count 2 should go
22   zero years to -- zero to 20.
23             THE COURT:  All right.  That correction will be
24   made.  Because the jury's findings were different on this
25   count.
```

```
 1              MR. BLANCHARD:  The Court struck the special
 2   finding before the jury verdict, yeah.
 3              THE COURT:  In this case.  Right.
 4              MS. VAN PELT:  Yes, Your Honor.  The correction
 5   should also be made in addition to the page referenced by
 6   Mr. Blanchard.
 7              Also on page 2, it discusses a mandatory minimum
 8   of five years to a maximum of 40 years.  I think it also
 9   changes the supervised release and the fine amount, and I
10   request that change be made as well, Your Honor.
11              THE COURT:  I think the fine amount then is only
12   $250,000 is the max.  Yeah.  It takes the 5 million out.
13              MS. VAN PELT:  Yes, Your Honor.
14              THE COURT:  Yeah.  Okay.
15              Ms. Van Pelt, you know that the probation office
16   calculates the offense level here as a Level 43.  The
17   defendant has a criminal history of I.  Because of the
18   convictions on Counts 4, 6 and 8 of the superseding
19   indictment -- or second superseding indictment, that's
20   mandatory life sentences.  The sentence on Count 1 has a
21   maximum term of life imprisonment.  The sentence on Count 2
22   is up to 20 years.  And the sentence on Count 3 is up to ten
23   years.
24              You're not disagreeing with those calculations;
25   correct?
```

4

1              MS. VAN PELT:  No, Your Honor.
2              THE COURT:  All right.  The fine range then varies
3     from 50,000 to $250,000, there is a total of $600 of special
4     assessments, and in terms of the periods of supervised
5     release, I don't believe anything changes there.  It would
6     be two to five years as to Count 1; it would still be up to
7     five years, I believe, as to Count 2 because that's a
8     20-year maximum sentence; and one to three years on Count 3;
9     and then two to five years on each of Counts 4, 6 and 8, the
10    periods of supervised release.  All right.  And $600 in
11    special assessments.
12             All right.  Let me hear first then from the United
13    States.  Yes?
14             MS. VAN PELT:  Your Honor, we had another
15    objection as well to the presentence investigation report,
16    and that's one that we made in our sentencing memorandum.
17             Mr. Turcios objects to the inclusion of the Tate
18    and the Smith homicides in the presentence investigation
19    report.  There was no evidence whatsoever presented at trial
20    that he was involved in those two homicides as detailed in
21    the sentencing memorandum -- and this is the same objection
22    that Mr. Arevalo made -- for the actions of others to
23    qualify as relevant offense conduct; they have to be jointly
24    undertaken.
25             When determining whether specific conduct is

1  jointly undertaken, the Court must first determine the scope
2  of the criminal activity the particular defendant agreed to
3  jointly undertake.  So there has to be some suggestion that
4  Mr. Turcios agreed to jointly undertake this action, not
5  just that his co-conspirators did things that were knowable
6  or foreseeable to him.
7          THE COURT:  But, you know, presentence reports
8  serve more than one purpose, they are there to assist the
9  Court at arriving at an appropriate sentence.  They also
10 help the Bureau of Prisons in knowing how to designate a
11 particular person.
12         In this case, the references to those two murders
13 do not, in my view, affect the sentencing decision at all
14 because of the nature of -- the mandatory nature of these
15 charges.
16         MS. VAN PELT:  Yes, Your Honor.
17         THE COURT:  But they are important for the Bureau
18 of Prisons to be able to evaluate the full scope of the
19 criminal activity of which he was within the -- encompassed
20 within, because it can affect security issues.  And so I
21 recognize the objection, but I'm not going to grant it.  I'm
22 not going to change the presentence report in that respect.
23 The Bureau of Prisons needs that information.
24         MS. VAN PELT:  Yes, Your Honor.  I understand the
25 Court's ruling.

6

1          And then just one more note that Mr. Turcios had
2   is in the presentence report, the probation officer notes
3   that she has identified no potential departures -- or
4   that -- no considerations that may warrant a departure.  And
5   from Mr. Turcios' perspective, the way that he is a
6   deportable alien may potentially warrant a departure,
7   particularly on the sentences that are less than mandatory
8   life.  And that's because it's a fact that deportable aliens
9   are subject to harsher conditions while incarcerated in the
10  Bureau of Prisons.  They are not eligible to participate in
11  various programming, and also they are not eligible to go to
12  a residential re-entry center or any term of home
13  confinement like other citizens would be.
14         So Mr. Turcios would just note that, from his
15  perspective, that is a potential consideration that may
16  warrant a departure, particularly on those counts that the
17  Court is sentencing less than life.
18         THE COURT:  All right.  I think that's more an
19  appropriate argument counsel makes rather than a defect in
20  the presentence report itself.  But I understand your
21  objection.  I'm not changing or adding anything to the
22  presentence report to reflect that.
23         MS. VAN PELT:  Yes, Your Honor.
24         THE COURT:  All right.  Then, Mr. Blanchard, I'll
25  hear from the government.

1           MR. BLANCHARD:  Thank you, Your Honor.
2           And while Ms. Van Pelt was making her objections,
3    we just double checked briefly on the cocaine penalties.  It
4    looks like it's a fine under 21 U.S.C. 841 of up to a
5    million dollars.
6           THE COURT:  Up to a million dollars?
7           MR. BLANCHARD:  And it looks like the term of
8    supervised release is at least three years.
9           THE COURT:  Three to five?
10          MR. BLANCHARD:  Yes, Your Honor.
11          THE COURT:  All right.  All right.  We'll make
12   those changes.
13          MR. BLANCHARD:  And, Your Honor, I was turning
14   around to see -- it was my understanding that Mr. Mayorga's
15   family was going to be here today, but they're not present.
16   They were here, as Your Honor will probably remember,
17   throughout the trial.  Mr. Mayorga's brother, Jose, and his
18   mother were here.
19          And I'm now -- it's my third time appearing in
20   front of you now talking about these murders in a sentencing
21   hearing, but in this case, we believe that the guidelines
22   are appropriate.  We believe that even if there were not a
23   mandatory life sentence that was required in this case, it's
24   more than warranted.
25          Mr. Beltran and Mr. Mayorga were about 40 years

                                                              8

1  old, they were alcoholics who hung out behind gas stations
2  and drank beer.  They weren't a threat to anybody, they
3  weren't a threat to MS-13.  Mr. Mayorga was not a gang
4  member, had no gang affiliation.  He was, as the autopsy
5  reports reflected, heavily intoxicated, more than twice the
6  legal limit to drive on the night that he was killed.  He
7  was a guy drinking beer behind a gas station who thought
8  that someone pretending to be a friend was going to help him
9  score some cocaine, and that's how he died.
10              It really didn't matter who the victims were.
11  This was all about committing murder so that people could
12  move up so that they could get new ranks, so that some of
13  them could get new nicknames.  And that's what this case
14  was.  The gang that we deal with in these cases, MS-13,
15  sure, they sell drugs; sure, they generate profits, but it's
16  paltry compared to the kind of funds that we see other gangs
17  and other drug trafficking organizations making.
18              This gang is largely about violence, it's about
19  committing murder, and you wonder what they're getting out
20  of it.  They're not making the kind of money that makes this
21  risk worth it, and certainly in this case, nearly all the
22  money that people were making was required to go up the
23  chain anyway.
24              We now are -- we have to routinely get pre-dawn
25  search warrants because the members of this gang are leaving

9

1   their homes before 6 a.m. to paint houses, to cut grass, to
2   work.  They are gainfully employed, they are basically
3   living the lives by day of a citizen or someone who is
4   contributing to society, and then at night, the alter ego
5   comes on.  There's a new nickname, I'm not Carlos anymore,
6   I'm Oculto, or pick an example.  And there's a dissociation,
7   it seems, where there are people who are otherwise fathers,
8   siblings, children, co-workers who are going on to commit
9   these heinous, heinous crimes in the name of an organization
10  that does nothing for them.  Again, they're not enriching
11  themselves.
12          All these cases end essentially the same way, and
13  it's with people going to prison, and it's with people going
14  to prison for a long time.  This gang isn't taking people
15  for a year or two years or five years.  Many of these people
16  have no criminal history when they come before the Court.
17  It's about murder.  It is an extremely, extremely violent
18  organization that seems to have a hold and just an endless
19  supply of young people who are continuing to fall into this
20  trap.  And we believe that it is extremely important to
21  deter others, that we impose sentences that are strict, that
22  the word is out, that if anybody participates in these
23  gang-related murders, that they're going to be dealt with as
24  strictly as the law will allow.
25          And, again, I -- we've now wrapped up this

1   prosecution, Judge, and I can't tell you -- I have no more
2   information today about why anybody was murdered than I did
3   when we started this case years ago; so ...
4              THE COURT:  All right.  Ms. Van Pelt.
5              MS. VAN PELT:  Yes, Your Honor.
6              Mr. Turcios preserves all issues that he's raised
7   at all points during the course of this prosecution, that
8   includes his objections on Eighth Amendment grounds to the
9   mandatory life sentences.
10             Obviously Mr. Turcios and counsel have seen how
11  the Court has sentenced the co-defendants in this case.  And
12  we'd just make one note on the cocaine conspiracy, Count 2.
13  The Court has sentenced the co-defendants to ten years on
14  that count, which is the statutory maximum.  I don't think
15  that's appropriate here for Mr. Turcios.  While the Court
16  didn't grant his Rule 29 motion for acquittal post-trial, it
17  is the case, and I think the government would agree, that
18  Mr. Turcios was far less culpable when it came to the
19  cocaine conspiracy, and, in the Court's order denying the
20  Rule 29 motion, accepted just the government's general
21  assertion that the clique sold cocaine, and Mr. Turcios was
22  a member of the clique and paid dues, and so thereby he was
23  culpable as to the cocaine conspiracy.
24             But there were no controlled buys, there were no
25  suggestions that Mr. Turcios himself sold any cocaine.  And

11

1  really the only evidence was that single message between
2  Mr. Arevalo and his girlfriend which refers to Carlos.  And
3  the message said:  I had coke for Carlos and had sold it to
4  him.  Which indicates, you know, that it was sold to him for
5  his personal use, not given to him for distribution.  There
6  was no suggestion that he was actually distributing the
7  cocaine.
8          And so on Count 2, the cocaine conspiracy,
9  Mr. Turcios suggests that a sentence, you know, far less
10 than ten years is appropriate for him as it pertains to his
11 conduct.
12         THE COURT:  All right.  Did you want to respond to
13 that, Mr. Blanchard?  I think you recommended ten years.
14         MR. BLANCHARD:  Your Honor, certainly the evidence
15 at trial was that Mr. Turcios Villatoro was not among the
16 more prolific drug dealers in the gang.  My recollection
17 standing here today without the transcript was that he and
18 Mr. Arevalo were more into marijuana for the most part.
19         We do believe that certainly there was sufficient
20 evidence to support his conviction on Count 2, but he
21 certainly was not selling the quantities of cocaine that we
22 saw from, for example, Manilester Andrade or Mario Guevara
23 or Melvin Canales.  So to the extent that counsel is arguing
24 that he's -- he should receive a lesser sentence on that
25 count because he's not as culpable in the cocaine dealing as

1  other people who received 10-year sentences or 20-year
2  sentences, we would agree with that.
3          THE COURT:  All right.  Mr. Turcios Villatoro,
4  come up to the lectern.
5          This is your chance to say anything you would like
6  the Court to consider before sentence is imposed.
7          THE DEFENDANT:  I have nothing to say.
8          THE COURT:  All right.  Well, as I know Ms. Van
9  Pelt has explained to you, several of these counts of
10 conviction carry mandatory life sentences.  The Court is
11 going to have to impose those sentence as follows:
12         You're sentenced to life imprisonment concurrent
13 on Counts 1, 4, 6 and 8.  You're sentenced to five years in
14 the custody of the Bureau of Prisons as to Count 2, and ten
15 years as to Count 3.  All those sentences are run concurrent
16 with each other.  And you will receive credit for the time
17 you've been in custody since August 5 of 2020.
18         I think, Counsel, you asked that he be designated
19 to Lewisburg; is that correct?
20         MS. VAN PELT:  Yes, Your Honor.
21         THE COURT:  All right.  We'll make that
22 recommendation as well.
23         When you complete the prison sentence -- well, you
24 may not ever complete it if it's a life sentence, we don't
25 know, but I am imposing five years of supervised release as

13

1   to Counts 1, 2, 4, 6 and 8, and three years as to Count 3,
2   all to run concurrent with each other.
3               Now, Ms. Van Pelt, when you went through the
4   presentence report with your client, did you carefully go
5   over pages 26 through 28, which list the conditions of
6   supervision?
7               MS. VAN PELT:  Yes, Your Honor.
8               THE COURT:  All right.  While you're on
9   supervision, you have to follow all the following
10  conditions.  First of all, the conditions that are spelled
11  out on pages 26 through 28 of the presentence report; do you
12  understand that?
13              THE DEFENDANT:  Yes.
14              THE COURT:  In particular, you have to be of
15  uniform good behavior while you're under supervision.  That
16  means you cannot violate any federal, state or local laws,
17  and that includes traffic laws; do you understand that?
18              THE DEFENDANT:  Yes.
19              THE COURT:  All right.  And Number 2, you have to
20  cooperate fully with the immigration authorities with any
21  deportation proceedings they bring against you, and if you
22  are deported, you're not allowed back in the United States
23  for any reason whatsoever unless you get permission from the
24  proper American authorities to do so; do you understand
25  that?

14

1    THE DEFENDANT: Yeah, I understand.

2    THE COURT: All right. If for some reason you are
3    allowed to remain in the United States, then you have to
4    also follow the following conditions. Number 1, you cannot
5    have any association with any known gang members or frequent
6    any locations where gang members are known to hang out; do
7    you understand that?

8    THE DEFENDANT: Yes, I understand.

9    THE COURT: All right. Number 2, you must be drug
10   free. You'll have to submit to drug testing for which --
11   and then such in or outpatient drug treatment if the testing
12   shows that you need such treatment; do you understand that?

13   THE DEFENDANT: Yes, I understand.

14   THE COURT: You will have to pay the costs of
15   testing and treatment to the extent you are able, and you'll
16   have to waive any privacy rights that you have to the
17   testing and treatment so the probation office can monitor
18   your compliance; do you understand that?

19   THE DEFENDANT: I understand.

20   THE COURT: All right. And I think I said the
21   costs of the testing and treatment I'm going to waive in
22   this case.

23   Lastly, you'll be required to get a GED in case
24   you are allowed to stay in the country. Most likely that
25   won't happen, but I just have those in the order.

15

1                Based on your financial situation, the Court finds
2      you are unable to afford the costs of incarceration,
3      supervision or any of the statutory fines, but there is six
4      counts of conviction, that means $600 in special
5      assessments, that does have to be paid promptly; do you
6      understand that?
7                THE DEFENDANT:  Yes, I understand.
8                THE COURT:  Since you pled not guilty and were
9      found guilty at trial, you have a right to appeal both your
10     convictions and your sentence.  Any appeal has to be noticed
11     within 14 days of today's date.  You have the right to be
12     represented by a lawyer throughout your appeal.  If you
13     cannot afford to pay for a lawyer yourself, one will be
14     appointed for you; do you understand that?
15               THE DEFENDANT:  Yes, I understand.
16               THE COURT:  And Ms. Van Pelt, I want you to stay
17     on board with your client to file a notice of appeal.
18               MS. VAN PELT:  Yes, Your Honor.
19               THE COURT:  And then depending upon what you and
20     the Fourth Circuit decide, whether you stay on as appointed
21     counsel, you'll have to address that with the Fourth
22     Circuit.
23               MS. VAN PELT:  Yes, Your Honor.
24               THE COURT:  All right.  Is there anything further
25     we need to address with the sentencing?

16

```
1                MR. BLANCHARD:  Your Honor, we have a restitution
2   order to hand up, and we also have a motion and order
3   dealing with the dismissal of the initial superseding
4   indictment counts.
5                THE COURT:  Okay.
6                MR. BLANCHARD:  Did we hand you the restitution
7   order yet, Your Honor?
8                MS. VAN PELT:  Oh, here it is.
9                THE COURT:  All right.  I've entered the order of
10  dismissal.
11               Let me take a look at the restitution order.  Stop
12  giving us double-sided documents.  They should not be
13  double-sided.  All right.
14               MR. BLANCHARD:  My apologies, Your Honor.
15               THE COURT:  All right.  I'm waiving any interest.
16               Mr. Turcios Villatoro, this restitution order is
17  going to require you to be jointly and severally, that means
18  you're responsible for the $8,000, but so are the
19  co-defendants.  So if they make some of that payment, then
20  you won't have to make as much.
21               But do you understand you've signed an order that
22  obligates you to pay possibly the whole 8,000 if the others
23  don't; do you understand that?
24               THE DEFENDANT:  Yes, I understand.
25               THE COURT:  All right.  All right.  I've signed
```
17

```
1   the restitution order.
2            Is there anything further on this case?
3            MR. BLANCHARD:  No, Your Honor.
4            THE COURT:  All right.  Then we'll recess court
5   for the day.
6            (Proceedings adjourned at 10:55 a.m.)
7            ----------------------------------
8   I certify that the foregoing is a true and accurate
9   transcription of my stenographic notes.
10
11            _____
12                    Stephanie M. Austin, RPR, CRR
```